## COMMISSIONER OF IMMIGRATION OF PORT OF NEW YORK *v.* GOTTLIEB ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 221.  Argued April 15, 16, 1924.—Decided May 26, 1924.

1. When the plain words of a statute leave no room for construction, the courts must follow it, however harsh the consequences. P. 313.
2. Section 3 of the Immigration Act of 1917 and § 2(d) of the Quota Law of 1921, as amended May 11, 1922, are both operative and should be construed as acts *in pari materia.* P. 312.
3. Section 3 of the Immigration Act of 1917, after an enumeration of excluded classes ending with the natives of a designated part of Asia and those of certain islands adjacent to that continent, declares that "the provision next foregoing" shall not apply to persons of various named occupations, including ministers of religion, nor to their legal wives or their children under 18 years, etc. *Held,* that the exception applies only to aliens coming from Asiatic regions referred to. P. 313.
4. Section 2(d) of the Quota Act provides that when the maximum number of aliens of any nationality shall have been admitted,

all others of such nationality applying during the same year shall be excluded, except (*inter alios*) ministers of religion, and gives preference, so far as possible, in the enforcement of the act, to the wives, children, etc., of citizens of the United States, of aliens here who have applied for citizenship, or of persons eligible to citizenship who have served in our military or naval forces. *Held*, that the wife and child of a minister have no right to admission when the quota allowed their nationality is exhausted. P. 313.

285 Fed. 295, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a judgment of the District Court discharging two aliens by *habeas corpus*.

*Mr. George Ross Hull,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for petitioner.

*Mr. Louis Marshall,* with whom *Mr. Joseph G. M. Browne, Mr. Barnet E. Kopelman, Mr. J. Philip Berg* and *Mr. Max J. Kohler* were on the briefs, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The respondents are the wife and infant son of Solomon Gottlieb, a rabbi of a synagogue in New York City. They are natives of Palestine who sought admission to this country in December, 1921.

After a hearing before the Board of Special Inquiry at Ellis Island, they were ordered deported, on the ground that the quota of immigrants entitled to be admitted had already been filled. Upon *habeas corpus* proceedings in the Federal Court for the Southern District of New York it was held they were entitled to admission, irrespective of quota limitations, as the wife and child of a minister, who was already here under § 2 (d) of the Act of May 19, 1921, c. 8, 42 Stat. 5, as amended May 11, 1922, c. 187, 42

Stat. 540. Thereupon they were ordered discharged. This judgment was affirmed by the Court of Appeals. 285 Fed. 295.

That court reached its conclusion by considering § 3 of the Act of 1917, c. 29, 39 Stat. 874, 875, *in pari materia* with § 2 (d) of the Act of 1921. Section 3 of the earlier act enumerates various classes of aliens who are excluded from admission into the United States, among them all persons from certain Asiatic territory with specified exceptions. The Act of 1921, as amended, is an act to limit the number of aliens who may be admitted under the immigration laws to the United States, and is declared to be " in addition to and not in substitution for the provisions of the immigration laws." § 4. Section 2 (d), among other things, provides that when the maximum number of aliens of any nationality shall have been admitted, all others of such nationality applying during the same year shall be excluded, except as otherwise provided in the act. Following this, one of the provisos enumerates the aliens who are thus excepted, among them, ministers of any religious denomination. Another proviso is: " That in the enforcement of this Act preference shall be given so far as possible to the wives, parents, brothers, sisters, children under eighteen years of age, and fiancées, (1) of citizens of the United States, (2) of aliens now in the United States who have applied for citizenship in the manner provided by law, or (3) of persons eligible to United States citizenship who served in the military or naval forces of the United States," etc.

The court below, taking these various provisions together, held that under § 3 of the Act of 1917, these respondents were entitled to admission.

The lower court was right in holding that the acts are *in pari materia,* and that § 3 of the earlier act is still fully operative and may be considered as though it formed a part of the later act. The question then is

whether it includes aliens occupying the status of these respondents.  The case, as the evidence shows, is one of peculiar and distressing hardship and it is not unnatural that any appropriate canon of construction should be laid hold of to justify a conclusion favorable to the respondents.  But if the plain words of the statute are against such a conclusion, leaving no room for construction, the courts have no choice but to follow it, without regard to the consequences.  *Chung Fook* v. *White,* 264 U. S. 443; *Zartarian* v. *Billings,* 204 U. S. 170; *Low Wah Suey* v. *Backus,* 225 U. S. 460, 476.  Section 3 of the Act of 1917 defines and enumerates the classes of aliens who are to be excluded—idiots, imbeciles, feeble-minded persons, paupers, professional beggars, diseased persons, criminals, polygamists, anarchists, prostitutes, and numerous others, the last in the enumeration being natives of islands not possessed by the United States adjacent to the continent of Asia and of the continent within certain described limits of latitude and longitude.  The clause relied upon immediately follows: " The provision next foregoing, however, shall not apply to persons of the following status or occupations: Government officers, *ministers* or religious teachers, missionaries, lawyers, physicians, chemists, civil engineers, teachers, students, authors, artists, merchants, and travelers for curiosity or pleasure, *nor to their legal wives or their children* under sixteen years of age who shall accompany them or who subsequently may apply for admission to the United States.  .  .  ."

The limited scope of this exception is apparent and no amount of discussion could make it plainer.  It applies to " the provision next foregoing," namely, to that dealing with aliens coming from the barred Asiatic zone, and to that only.

Section 2 (d) of the Quota Law of 1921, as amended, in terms, permits the admission of " aliens returning from a

temporary visit abroad, aliens who are professional actors, artists, lecturers, singers, nurses, *ministers of any religious denomination,* professors for colleges or seminaries, aliens belonging to any recognized learned profession, or aliens employed as domestic servants," notwithstanding the quota of the same nationality has been filled. Then follows the further proviso already quoted that in the enforcement of the act "preference shall be given so far as possible to the wives . . . children," etc., of certain enumerated classes.

The respondents are not natives of the barred Asiatic zone and, therefore, are not entitled to admission under the exception in the Act of 1917. There is nothing in the later Act of 1921, as amended, which gives the wife or children of a minister any right of entry beyond that enjoyed by aliens generally, unless he falls within one of the classes specified in the proviso to § 2 (d), in which event they are to be given preference over other aliens within the limits of the quota. The quota having been exhausted, no case was presented calling for the application of the proviso, even if the respondents could otherwise have been brought within its terms. The contention that it is absurd and unreasonable to say that the wives and children of ministers from the barred Asiatic zone are to be admitted and those outside of it denied admission, does not require consideration, since the result we have stated necessarily follows from the plain words of the law, for which we are not at liberty to substitute a rule based upon other notions of policy or justice. That aliens from one part of the world shall be admitted according to their status and those from another part according to fixed numerical proportions, is a matter wholly within the discretion of the lawmaking body, with which the courts have no authority to interfere.

*Reversed.*