**UNITED STATES ex rel. DUNER et al. v. CURRAN, Commissioner of Immigration.** *

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

No. 49.

**1. Aliens** ⟜51½, **New, vol. 16A Key-No. Series—Wife and children of minister entering country before 1924 Immigration Act became effective exempt from quota provisions.**

Wife and children of minister or professor, who entered country to carry on his vocation before Immigration Act May 26, 1924 (Comp. St. Supp. 1925, §§ 4289¾–4289¾nn) became effective, are, under section 4(d) thereof (Comp. St. Supp. 1925, § 4289¾b), exempt from quota provisions.

**2. Aliens** ⟜46—**Physically defective son of minister, entering country to carry on his vocation, held not entitled to enter.**

Fifteen year old son of minister, entering country to carry on his vocation, found to be suffering from valvular disease of heart and certified as physically defective, *held* excluded from entry by Basic Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b).

*Certiorari denied 46 S. Ct. 475, 70 L. Ed. ——.

**3. Aliens ☞54(16)—Court cannot inquire into finding and certificate that alien is physically defective.**

Court cannot inquire into finding and certificate that alien, desiring to enter country, is physically defective.

**4. Aliens ☞54(9) — Finding that aliens are likely to become public charges must be supported by evidence.**

Finding that aliens, seeking to enter country, are likely to become public charges, must be supported by evidence.

**5. Aliens ☞54(9)—Finding that children seeking entry were likely to become public charges held unsupported by evidence.**

Finding that all children of minister, who entered country solely to carry on his vocation, if allowed to enter, were likely to become public charges, *held* unsupported by evidence; their tender years and possibility of death of their parents being insufficient to justify such conclusion.

Manton, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceedings by the United States, on the relation of Beila Duner and others, against Henry H. Curran, as Commissioner of Immigration. From an order releasing relators from an order of exclusion by the Secretary of Labor, the Commissioner appeals. Order affirmed in part, and reversed in part.

Appeal from an order on habeas corpus releasing the relators from an order of exclusion by the Secretary of Labor under the Immigration Acts.

The aliens are the wife and four children under 18 years of age of one Jacob S. Duner, an alien resident of the city of New York and the rabbi of a Jewish congregation in that city. Duner lived in Poland, where he had been a rabbi for about 18 years. He arrived in New York on November 3, 1923, under a call to a Jewish congregation; and for the sole purpose of pursuing his profession. His wife and four children followed him, arriving in New York on November 11, 1924. Of these, the youngest, Channa, 4 years old, upon examination was found to be mentally defective, and was so certified by the surgeon in charge. His son Michel, 15 years old, on a similar examination was found to be suffering from a valvular disease of the heart, which might affect his ability to earn a living, and was so certified by the surgeon. All five of the aliens were beyond the quota admissible under the act of 1924 (Comp. St. Supp. 1925, §§ 4289¾–4289¾nn) and were excluded for this rea-

son. Channa and Michel were excluded, also, for the defects above mentioned under the Basic Act of 1917 (Comp. St. 1918, §§ 4289¼a–4289¼u), and the mother, Beila, as an alien accompanying the child, Channa, and necessary to her safe return. All the children were likewise excluded as persons likely to become a public charge.

After an unsuccessful appeal to the Secretary of Labor from these decisions of the Board of Special Inquiry, the husband took out the writ, upon which the District Court discharged all the aliens except Channa, and allowed the mother, Beila, to furnish a suitable attendant in place of herself.

Emory R. Buckner, U. S. Atty. (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Morris Jablow, of New York City (Louis Marshall, of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The chief question is whether section 4 (d) of the Act of 1924 (Comp. St. Supp. 1925, § 4289¾b) applies to the wife and children of a minister or professor who entered the country before July 1, 1924, the date when it went into effect. The section is in two parts: First, it exempts from the quota a minister "who continuously for at least two years * * * has been, and who seeks to enter the United States solely for the purpose of, carrying on the vocation," etc. Second, it exempts "his wife, * * * if accompanying or following to join him." Grammatically the logic is inescapable; "his" and "him" refer to the minister or professor, who is exempted by the first part of the section. It is as though the section read: "We exempt the minister, and the wife of the minister whom we so exempt."

But the distinction is meaningless as matter of policy. We can see no possible difference in the desirability of the family, whether its head entered before or after July 1, 1924, so long as he answers the prescribed description. We, of course, agree that whenever he enters he must already have practiced his profession for two years and must have entered solely to carry it on, but beyond that we are not disposed to press grammar at the expense of the plain purpose. Therefore, while not all ministers who had lawfully entered under the broader statutes might bring in their families, those

might who would have had the same right upon a later entry. This does not give a retroactive scope to the statute, since it allows no family to enter which arrived before July 1, 1924. We think that the pronouns "his" and "him" may, without too great violence, be taken as incorporating the description of the familial head only in terms of his qualifications to enter, and not of his right to do so.

The occasion of the section strongly corroborates what we have inferred from its text. The statute was passed on May 26, 1924, at a time when the status of such a family was before the Supreme Court, which indeed decided Commissioner v. Gottlieb, 265 U. S. 310, 44 S. Ct. 528, 68 L. Ed. 1031, on that very day. It was certainly intended to lay any doubts which were known to exist, and which that decision proved to be well founded. After the decision, by resolution Congress allowed all aliens to remain who had entered on the faith of the decisions so reversed or overruled. Therefore the situation was that all who had entered could stay, and all might in the future enter if the head of the family should himself enter after July, 1, 1924. But if the appellant be right, none may enter whose head was already here, though he were within the more restricted class than those allowed to remain by the resolution. He must leave and come back again. It seems to us not unreasonable to describe such a result as fantastic, and such a purpose is incredible to impute to Congress.

We acknowledge that our construction in fact involves substituting other words in place of those used, and we shall seek no locutions to disguise the liberty taken or the risk assumed. We can appeal, however, to the universal and ancient practice of courts in dealing with any kind of words. Their purpose may appear so clearly as to escape defeat, in spite of its imperfect expression, and though other words must be imputed to the author. In saying that we are thus ascertaining the author's intent we speak somewhat elliptically. That intent as a fact in his mental life is irrelevant; his words are taken to mean what they mean in public use. But if the contrary expression be not too explicit, the disclosed purpose may prevail to cover an unforeseen event, which the author would certainly have comprised by proper words, had it been presented to him. We can see no useful purpose in denying that this is what takes place in such cases, and is what we are doing here.

Immigration laws have repeatedly been so treated. Chew Heong v. U. S., 112 U. S. 536, 5 S. Ct. 255, 28 L. Ed. 770; Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Lau Ow Bew v. U. S., 144 U. S. 47, 12 S. Ct. 517, 36 L. Ed. 340; Tsoi Sim v. U. S., 116 F. 920, 54 C. C. A. 154 (C. C. A. 9). It is quite true that in Commissioner v. Gottlieb, supra, the Supreme Court found the language of the act too explicit to allow the same result. But one case can scarcely be a precedent for another on a question of interpretation, where the result depends upon the utterance as a whole, its occasion, and its precise expression. Naturally we are especially solicitous to follow whatever may be the implications of that decision, but with the best possible will we cannot see that it gives us any guidance here, even though its subject-matter was so closely akin. We conclude, therefore, that section 4 (d) exempted the family of a minister who had himself entered before it went into effect, and the conclusion of the District Court is affirmed on that point.

As to the exclusion of the mother, Beila, that she might act as an attendant upon the child, Channa, the question is apparently moot. At least we are told that the little girl has gone back with a satisfactory substitute. We decline, therefore, to decide whether the District Court has the power to interfere with the discretion of the Secretary or Commissioner under section 18 of the Basic Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼j). Since Beila is admissible per se, any ground for her exclusion has now disappeared.

[2, 3] Michel Duner must be excluded; he falls within the language of section 3 of the Act of 1917 (section 4289¼b) as a person "found to be and * * * certified by the examining surgeon as being * * * physically defective." Into that finding and certificate we cannot inquire. U. S. ex rel. Feuerstein v. Tod, 296 F. 127 (C. C. A. 2); Tambara v. Weedin, 299 F. 299 (C. C. A. 9). Assuming for argument that we may consider whether the defect was such as might affect his ability to earn a living, we have no evidence to contradict the finding of the surgeon. The question was indeed involved in U. S. ex rel. Engel v. Tod, 294 F. 820 (C. C. A. 2), but was not discussed, and that case is not to be understood as involving a holding to the contrary, as appears from the later case of U. S. ex rel. Feuerstein v. Tod, supra.

[4, 5] Finally, we have the question whether

the finding should stand that all the children are likely to become a public charge. The record is destitute of the slightest evidence justifying such a conclusion. Plainly it cannot be because they are of tender years. It is true that by the death of their parents they might become such, but so would any children of like age. It is impossible that the statute meant to exclude all such children. Whatever may have been the decisions before Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114, that case settled the rule that there must be some evidence to support that finding as well as any other. The transposition of the phrase in section 3 has nothing to do with that question. Whatever it now means, it must be still supported by evidence. Drastic as are the powers of the board, they cannot entirely escape all judicial review by the use of that phrase.

Order affirmed as to Beila, Golde, Hudes, and Moshe Duner; order reversed as to Michel Duner.

MANTON, Circuit Judge (dissenting). Unfortunately, I think the immigrants here seeking admission must be excluded, because of section 4 (d) of the Immigration Act of 1924. It provides for admission, as nonquota immigrants, of a minister (and family) "who seeks to enter the United States solely for the purpose of carrying on the vocation of minister of any religious denomination, * * * and his wife, and his unmarried children under eighteen years of age, if accompanying or following to join him."

Rabbi Duner was admitted to the United States prior to July 1, 1924, which is the effective date of the immigration statute under which his family seeks admission. He made no application to enter after July 1, 1924, and therefore was not in the class of "one who seeks to enter the United States under section 4, subd. (d)." The wife and children of a minister seeking to take advantage of this statute, I think, must of necessity be the family of a minister who entered after July 1, 1924. There is no ambiguity in the phrase of the statute. Therefore the intent of Congress is not important, and there is no reason for the construction of the statute. Luria v. United States, 231 U. S. 9, 34 S. Ct. 10, 58 L. Ed. 101; Dewey v. United States, 178 U. S. 510, 20 S. Ct. 981, 44 L. Ed. 1170; Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; United States v. Four Hundred and Twenty Dollars (D. C.) 162 F. 803.

We are not permitted to read into the act an exemption which is not there. Commissioner of Immigration v. Gottlieb, 265 U. S. 310, 44 S. Ct. 528, 68 L. Ed. 1031; Chung Fook v. White, 264 U. S. 443, 44 S. Ct. 361, 68 L. Ed. 781.

I dissent.