CHESTER N. WEAVER COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHESTER N. WEAVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELSIE S. WEAVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82865, 82870, 82871. Promulgated February 17, 1937.

*A. E. Graupner, Esq.*, for the petitioners.
*O. W. Swecker, Esq.*, for the respondent.

## OPINION.

TURNER: The only question for determination is whether or not section 23 (r) (1)[1] of the Revenue Act of 1932 bars the deduction of the losses sustained by the petitioners on liquidation of the Townsend Co. There is no claim by the petitioners that the gross income reported, and against which the deduction is sought, includes gains from the sale of stocks or bonds which were not capital assets.

---

[1] SEC. 23. (r) LIMITATION ON STOCK LOSSES.—(1) Losses from sales or exchanges of stocks and bonds (as defined in subsection (t) of this section) which are not capital assets (as defined in section 101) shall be allowed only to the extent of the gains from such sales or exchanges (including gains which may be derived by a taxpayer from the retirement of his own obligations).

It is the contention of the petitioners that the provisions of sections 22 (d), 115 (c), 111, and 112 (a)[2] of the act provide for the deduction in full of losses sustained as the result of a distribution in complete liquidation of a corporation, and that the provisions of section 23, relating to deductions from gross income, are not applicable.

The petitioners' argument that the losses in question are deductible without regard to section 23 starts with section 22 (d), which provides that "distributions by corporations shall be taxable to shareholders as provided in section 115." Referring next to subsection (c) of section 115, they point out that although "amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock" the "gain or loss to a distributee resulting from such exchange" is determined under section 111, and "recognized" to the extent provided in section 112. Our attention is then called to the fact that by the terms of section 112 (a), the entire amount of gain or loss "upon the sale or exchange" of property "shall be recognized" except as thereafter provided in that section. It is then concluded that since the remaining provisions of section 112 contain no limitation or prohibition of the recognition of a loss resulting from complete liquidation of a corporation, the entire amount of the loss is recognized, and being recognized in full, its deduction is in no way dependent upon or limited by the provisions of section 23.

The fallacies in this argument are elementary and obvious, and are at once apparent upon examination of the structure and plan of the income tax statute. The tax is imposed on net income and, according to section 21, net income is "gross income computed under

---

[2] SEC. 22. (d) DISTRIBUTIONS BY CORPORATIONS.—Distributions by corporations shall be taxable to the shareholders as provided in section 115.

SEC. 115. (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h)) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital accounts shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

SEC. 111. (a) COMPUTATION OF GAIN OR LOSS.—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b), and the loss shall be the excess of such basis over the amount realized.

*　*　*　*　*　*　*

(c) RECOGNITION OF GAIN OR LOSS.—In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 112.

SEC. 112. (a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

section 22, less the deductions allowed by section 23." Section 22 provides generally that gross income "includes gains, profits, and income * * * of whatever kind and in whatever form paid, or from * * * any source whatever." It also enumerates certain specific items that are to be included in gross income and others that are to be excluded. Section 23 enumerates and describes the allowable deductions referred to in section 21. It is argued in this connection that sections 112 to 120, inclusive, are relief or distinctive provisions, and to rule that their application is to be made with reference to section 23 would amount to their repeal or nullification. We find nothing in any of these sections to indicate that the so-called relief or distinctive provisions are to be applied without reference to section 22 if they involve items of gain or profit, or without references to section 23 if they involve losses or other charges allowable against gross income. On the other hand, Congress has particularly and specifically brought the application of these so-called relief sections within the provisions of sections 22 and 23. Illustrations are numerous. Subsection (b) (7) of section 22 provides for the exclusion from gross income of the items of gain set forth in section 116, while subsections (g), (h), (i), (l), (m), and (n) of section 23 specifically give effect to the provisions of sections 113, 118, 117, 114 (b) (3), and (4), 114, and 120, respectively. It is thus apparent from the general plan of the statute that, in the absence of specific language to the contrary, deductions from gross income are allowable by and through the provisions of section 23 only. No other method of determining net income is provided.

The petitioners seek to vary the general plan of the statute by arguing that losses resulting to stockholders from corporate liquidations are to be given effect through section 22 (d). That argument is, in short, a claim that a loss deduction may be taken in the form of a minus or negative item of gross income, under the gross income provisions of the statute and without regard to the provisions of section 23. Obviously the provision in section 22 (d), to the effect that "distributions by corporations shall be taxable to shareholders as provided in section 115", is not susceptible of such strained construction.

The argument made here would also permit the deduction of a loss from the sale of stocks or securities on the market, without regard to section 23, since section 112 (a) provides that such a loss is to be recognized in full, there being no subsequent provision in that section providing otherwise. Such reasoning would completely nullify the provisions of section 23 (e), (f), and (r) (1). The recognition or nonrecognition of gain or loss under section 112 is in no sense a determination that the gain is to be included in gross income or that the loss is to be deducted therefrom. It is merely a determination as

to whether or not the gain or loss is to be given such tax significance as the statute provides in the year in which the transaction giving rise to the gain or loss occurred, or is to be postponed until the happening of a further transaction in a subsequent year. Even though recognized, the tax effect of the gain or loss in computing net income is to be determined through the application of the gross income and deduction provisions of the statute. The result here being a recognized loss, the extent to which that loss is deductible is determined by the provisions of section 23.

In their reply brief the petitioners make the further contention that the limitation prescribed by section 23 (r) (1), on loss deductions, is not applicable here on the ground that a loss sustained in the disposition of stock in a corporate liquidation is not a loss from the sale or exchange of stock within the meaning of the statute. The reasoning advanced is that Congress, through sections 22 (d) and 115 (c), on the one hand, and sections 22 (e) and 111 (a) and (b) on the other, has carefully drawn a distinction between the disposition of stock in liquidation and an ordinary sale or exchange of stock on the market, and that the disallowance or limitation under section 23 (r) (1), of a loss sustained in the disposition of stock in liquidation requires the distortion or disregard of other pertinent provisions of the statute. It is also claimed that section 23 (r) (1) is applicable only to losses sustained in a sale or exchange of stocks and bonds on the market, because the Congressional Committees, in stating reasons for the insertion of section 23 (r) (1) in the statute, made specific reference to sales or exchanges on the market and no reference to the disposition of stock in a corporate liquidation.

It is well established that the reports of Congressional Committees may be resorted to as an aid to construction when the terms of the statute are contradictory or ambiguous, or the meaning of the words used is doubtful. *Caminetti* v. *United States*, 242 U. S. 470; *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523. But it is equally well established that the intent of the lawmaker must be sought in the language of the statute, and where that language is clear and unambiguous, it must be enforced according to its terms and may not be varied or limited by reference to committee reports. The plain language of the statute may not be cast aside for other language thought by some one to have been in the mind of the legislative body. Congress must be presumed to have meant what it has said. *Crooks* v. *Harrelson*, 282 U. S. 55; *United States* v. *Goldenberg*, 168 U. S. 95; *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85; *Edith M. O'Donnell*, 35 B. T. A. 251. From a consideration of the cases before us and the provisions of the statute involved, it does not appear here that the aid of the Committee reports is invoked because the language

of section 23 (r) (1) is ambiguous, but because the petitioners desire to limit and restrict the application of that language to the situations covered by specific illustrations in those reports. Clearly the cases cited do not permit reference to legislative history for such purposes, and where there is no ambiguity the language of the statute is controlling.

In support of their claim for a narrow and restricted application of section 23 (r) (1), the petitioners have cited numerous court decisions which deal with the interpretation and construction of statutes. It is our opinion that the cases cited generally support the respondent rather than the petitioners. In *Helvering* v. *Stockholm Enskilda Bank*, 293 U. S. 84, the Supreme Court stated that the intention of Congress, with reference to a particular provision of a taxing statute, is to be determined not by viewing the provision apart and separate from its setting in the act, but by considering it in connection with the context, general purpose of the statute in which it is found, and the occasion and circumstances of its use. In section 115 (c), on which petitioners base their claim for distinction, it is provided that amounts distributed in complete liquidation of a corporation are to be treated "as in full payment in exchange for the stock." It is then provided that the amount of gain or loss is to be "determined under section 111" and recognized "to the extent provided in section 112." These sections deal generally with the "sale or exchange" or "the sale or other disposition" of property. It thus appears by direct reference to other sections of the statute, that the disposition of corporate stock in liquidation is to be treated, for income tax purposes, as a "sale or exchange" and the distinction claimed by the petitioners is refuted by the plain words of the statute. Furthermore, it is interesting to note that if any doubt did exist and there were any basis for a claim of ambiguity, the report of the Committee on Ways and Means of the House of Representatives submitted with the bill which became the Revenue Act of 1924, in which report the language used in section 115 (c) was inserted, definitely indicates that the disposition of stock in a corporate liquidation is, for income tax purposes, a sale. The Committee there said: "The proposed bill, as did the 1918 Act, treats a liquidating dividend as a sale of the stock to the corporation and recognizes the true effect of such a distribution."

The deduction of recognized losses in the case of an individual is governed by the provisions of subsection (e) of section 23, and of a corporation by the provisions of subsection (f). In both of these subsections it is provided that the deductions so allowed are subject to the limitation provided in subsection (r), paragraph (1) of which has been quoted above. The language of that limitation is plain and

the deduction of any loss resulting from the sale or exchange of stocks or bonds, not capital assets, is limited in amount to gains derived from the sale or exchange of similar assets. In the cases before us the preferred stock of the Townsend Co. was disposed of in liquidation of that company. The stock did not constitute capital assets in the hands of the petitioners and they make no claim that they realized any gains from the sale of similar assets. This disposition of the stock, under the provisions of the statute considered above, was a sale or exchange and the deduction of the losses sustained is barred by the provisions of section 23 (r) (1) of the statute.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH, dissenting: It is a cardinal principle of statutory construction that taxing statutes should be interpreted according to the intent of the legislative body enacting them. Thus, in *Smythe* v. *Fiske*, 23 Wall. 374, the Supreme Court said:

A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. *People* v. *The Utica Insurance Co.*, 15 Johnson, 380; *Atkins* v. *The Fibre Disintegrating Co.*, 18 Wallace, 301; Bacon's Abridgment, title Statutes, 1, 2, 3, 5. The intention of the lawmaker is the law.

In *Helvering* v. *New York Trust Co.*, 292 U. S. 455, the Supreme Court said:

The rule that, where the statute contains no ambiguity, it must be taken literally and given effect according to its language, is a sound one not to be put aside to avoid hardships that may sometimes result from giving effect to the legislative purpose. *Commr. of Immigration* v. *Gottlieb*, 265 U. S. 310, 313, 44 S. Ct. 528, 68 L. Ed. 1031; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1, 37, 15 S. Ct. 508, 39 L. Ed. 601. But the expounding of a statutory provision strictly according to the letter without regard to other parts of the act and legislative history would often defeat the object intended to be accomplished. Speaking through Chief Justice Taney in *Brown* v. *Duchesne*, 19 How. 183, page 194, 15 L. Ed. 595, this court said: "It is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning." Quite recently in *Ozawa* v. *United States*, 260 U. S. 178, page 194, we said: "It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design

and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail." And in *Barrett* v. *Van Pelt*, 268 U. S. 85, 90, 45 S. Ct. 437, 439, 69 L. Ed. 857, we applied the rule laid down in *People* v. *Utica Ins. Co.*, 15 Johns. (N. Y.) 358, 381, 8 Am. Dec. 243, that "a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of a statute, is not within the statute, unless it is within the intention of the makers."

Did the Congress by section 23 (r) intend to prevent corporate stockholders sustaining losses upon the liquidation of corporations from deducting those losses from gross income except to the extent of gains realized from sales or exchanges of stocks and bonds? I think not.

The legislative history of section 23 (r) of the Revenue Act of 1932 shows that that provision was designed to prevent corporate stockholders from deducting from gross income losses created through sales or exchanges "in the stock and bond markets." The Ways and Means Committee Report 708 on H. R. 10236, which later became the Revenue Act of 1932, comments upon five proposed additions to section 23 of the Revenue Act of 1928, i. e., subsections (r), (s), (t), (u), and (v). These proposed subsections emerged in amended form as subsections (r), (s), and (t) of the Revenue Act of 1932. In presenting the five proposed additions to the House the Ways and Means Committee Report stated, p. 12:

Many taxpayers have been completely eliminating from tax their income from salaries, dividends, rents, etc., by deducting therefrom losses sustained in the stock and bond markets, with serious effect upon the revenue. Your committee is of the opinion that some limitation ought to be placed on the allowance of such losses.

After referring to the exclusion of "dealers in securities", as provided in subsection 23 (r) (3), the Committee report stated:

Traders or other taxpayers who buy and sell securities for investment or speculation, whether or not in their own account, and irrespective of whether such buying or selling constitutes the carrying on of a trade or business, are not regarded as dealers in securities within the meaning of this rule.

The Finance Committee Report of the Senate on this same bill (Report 665, p. 12) contains the following:

The House Bill adopted very severe limitations upon the allowance of losses from the sale of securities, as a deduction in computing net income. The provision is based upon a twofold policy: (1) Protecting the revenues from the growing practice of reducing tax liabilities by the sale of securities on which losses had accrued, and (2) preventing speculative losses from wiping out ordinary income, which represents real tax-paying ability.

There is nothing in the Committee reports which tends in the slightest to show that section 23 (r) had in contemplation losses sustained through the liquidation of corporations.

Section 22 (d) of the Revenue Act of 1928 provides that "Distributions by corporations shall be taxable to the shareholders as provided in section 115", and section 115 (c) provides in part:

Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

The Revenue Act of 1928 contained no provision corresponding to section 23 (r) of the Revenue Act of 1932. Section 22 (d) and section 115 (c) of the Revenue Act of 1928 were incorporated and made a part, without change, of the Revenue Act of 1932.

Where corporations are liquidated, stockholders receiving liquidation distributions may or may not turn in their shares of stock. It is a common thing for them to do so. See *Phelps* v. *Commissioner*, 54 Fed. (2d) 289. Whether they do so or not, however, they are treated as exchanges under both the Revenue Act of 1928 and that of 1932 for the purpose of giving corporate stockholders the benefits of sections 111 and 112.

The word "exchange" in its ordinary meaning carries with it the idea of mutual agreement—a transfer of property for property in a transaction freely arrived at between two parties. See *Law* v. *McLaughlin*, 2 Fed. Supp. 601. These elements are lacking where in distributions in liquidation a stockholder has no alternative but to surrender his shares of stock and receive his proportion of the assets of the corporation distributable to him. Section 115 (c) does not provide that distributions in liquidation shall constitute "exchanges." It simply provides that they shall be treated as in full or part payment "in exchange" for the stock.

In section 23 (r) of the Revenue Act of 1932 the word "exchange" is coupled with the word "sales." Under the doctrine of *ejusdem generis* the word "exchanges" must be interpreted in the light of the word with which it is associated. Losses sustained upon sales of stocks and bonds are subject to the limitation of section 23 (r) (1). If the word "exchanges" had not been used in this provision the very evil at which section 23 (r) was aimed might have been perpetuated by corporate stockholders exchanging their stocks and bonds for other securities or other property. Such circumvention of the statute was forestalled by the language used by the draftsmen of the act.

In the light of the legislative history of section 23 (r) I can not believe that Congress had any intention of limiting the deduction from gross income of losses sustained by taxpayers in the liquidation of corporations.

BLACK, TYSON, HILL, and HARRON agree with this dissent.