## In re WISCONSIN CENT. R. CO.
### No. 17104.

District Court, D. Minnesota,
Fourth Division.
Dec. 19, 1946.

See also D.C., 69 F.Supp. 693.

Samuel H. Morgan, of St. Paul, Minn. and M'Cready Sykes, of New York City (Stewart & Shearer, of New York City, of counsel), for Trustees under First General Mortgage.

Edwin Martenet, of New York City, for First General Protective Committee.

Henry S. Mitchell and Leonard H. Murray, both of Minneapolis, Minn., for Canadian Pac. R. Co.

Frank A. Janes, of Minneapolis, Minn. for Trustees of Superior and Duluth Division and Terminal First Mortgage.

Paul D. Miller and A. Albert Minton, both of New York City, and Bergmann Richards, of Minneapolis, Minn. for Protective Committee for holders of Superior and Duluth Division and Terminal First Mortgage Bonds.

James E. Dorsey and Donald West, both of Minneapolis, Minn., for Trustees of Debtor Co.

Stinchfield, Mackall, Crounse & Moore and Donald A. Holmes, all of Minneapolis, Minn., for Trustees of First & Refunding Mortgage.

Brill & Maslon and Josiah E. Brill, all of Minneapolis, Minn., for Protective Committee for holders of First & Refunding Mortgage Bonds.

NORDBYE, District Judge.

There were three matters presented: First, the petition and amended petition of the Trustees of the First General Mortgage for payment of certain interest coupons on the First General Bonds; second, the petition of the Trustees of the Superior and Duluth Division and Terminal First Mortgage and the Protective Committee for the holders of bonds of that issue for payment of certain interest coupons on said bonds; and third, the petition of the Superior and Duluth Protective Committee for an order directing the Trustees of the debtor to use surplus cash in their possession for the acquisition of outstanding bonds of the debtor at a discount.

The Superior and Duluth Group had heretofore filed objections to the payment of any interest on the First General Mortgage Bonds, but, at the hearing, counsel for the Superior and Duluth Protective Committee stated that, if the Court should deny the Superior and Duluth petition requiring the Trustees to purchase bonds at a discount with surplus cash, then no objection would be made to an order with an appropriate reservation clause granting the First General petitions for the payment of interest. Proof was thereupon offered by the First General Trustees in support of their petitions. In view of the withdrawal of objection by the Superior and Duluth Group under the condition heretofore stated, and upon the evidence offered in support of the First General petition, it follows that the petitions for the payment of interest on the First General Bonds should be granted unless the Court requires the Trustees to use surplus cash to purchase outstanding bonds at a discount, in which event there probably would be insufficient funds with which to pay any interest at this time.

■ After due consideration, the Court is of the opinion that the Superior and Duluth Group have failed to sustain the burden of proof resting upon them with respect to their petition for the payment of interest on their bonds. Interest has not been paid on any of the bonds since the advent of the receivership in 1932. This is the first petition that has ever been presented to this Court in which it is contended that the earnings of the Superior and Duluth Division have been sufficient to justify payment of any of the interest due on the outstanding bonds. At the hearing, certain estimates were made by Mr. V. V. Boatner of the earnings of the Superior and Duluth Division for the years 1940, 1942, 1943, and 1944. There is evidence which indicates that these estimates are at variance in certain material instances with the actual experience of the railroad during the years in question as to income and expenses. The estimates also are based in part upon the consideration of factors contrary to those actually existing. No attempt has been made to compute the earnings of the Superior and Duluth Division during the years from the inception of the receivership to the test years when the 1939 formula was applied. It is to be gathered from the testimony that the application of the formula for the test years in 1936, 1937, 1939, and 1941 shows a deficit for this division for each year except 1937. While it may be that the Superior and Duluth Division will show some earnings before interest charges during the war years, when unusual traffic was enjoyed by the entire road, it would be impossible for the Court to determine, on the showing submitted, whether there are any earnings for these bondholders so as to justify the payment of any of the interest coupons without an over-all picture of the earnings for this division during the entire period of the receivership. Every one recognizes that there were certain years when there were substantial deficits on the Superior and Duluth Division. Deficits would have to be offset against any earnings in order to determine whether interest has been earned. On the evidence submitted, therefore, the petition of the Superior and Duluth Group for payment of interest must be denied.

■ This brings me to the question of using surplus funds to buy outstanding bonds at a discount. On the assumption that there are $7,000,000 in surplus funds, the petition of the Superior and Duluth Group suggests three alternative plans. Under Plan No. 1, $3,500,000 would be used

to purchase First General Bonds, $1,500,000 to purchase Superior and Duluth Bonds, and $2,000,000 to purchase Refunding Bonds. Under Plan No. 2, $5,000,000 would be used to purchase First General Bonds, and $2,000,000 to purchase Superior and Duluth Bonds. Under Plan No. 3, the $7,000,000 which the Superior and Duluth petition refers to as surplus cash would be used solely for the purpose of purchasing First General Bonds. At the outset, it seems clear that the only plan which could be given any consideration by the Court would be Plan No. 3. There is no satisfactory showing that there are any surplus funds which are, or can be, impounded for the benefit of the Superior and Duluth or Refunding Bondholders. The Trustees of the First and Refunding Mortgage and the Canadian Pacific Railway Company, holder of most of the bonds outstanding of this issue, have refused to join with the Superior and Duluth petitioners with respect to the purchase of either Superior and Duluth or Refunding Bonds, although they favor the purchase of First General Bonds in some amount at a discount. The First and Refunding Bondholders' Committee supported the motion of the Superior and Duluth petitioners. It is represented that this Committee has authorizations from the holders of $1,179,000 principal amount of these bonds.

Under the so-called 1939 formula, approved as fair and reasonable by E. A. Whitman, one of the Trustees of the debtor, and which has now received the approval of the Interstate Commerce Commission examiners, who have made their report to the Commission on the reorganization plan, any surplus cash in the hands of the Trustees inures to the benefit of the First General Mortgage under its terms. While the Court is not at this time called upon to determine definitively whether the 1939 formula is a fair and reasonable formula for allocating revenue and expenses between the mortgage divisions of this road, such assumption will be made in view of the present record for the purpose of determining the disposition of these petitions.

At this hearing, the First General Group strenuously opposed any and all plans proposed by the Superior and Duluth Group regarding the purchase of outstanding bonds at a discount. They object to the use of their impounded funds for this purpose and deny that there are surplus funds in the amount suggested. There may be nothing "monstrous", as the opponents of the plan suggest, or inherently wrong about the type of proposal which the Superior and Duluth Group are urging. The purchase of bonds at a discount under a plan approved by the bondholders concerned, which would treat all of them fairly and impartially and without any coercion, may merely afford the bondholders an opportunity to sell their bonds at a figure higher than the prevailing market price and may be simply sound business on the part of the Trustees in availing themselves of an opportunity to reduce the outstanding indebtedness on the road, and the result may be a distinct advantage to the entire estate, deal fairly with both the senior and junior lienholders, and simplify the problem of reorganizing the debtor railroad. But a consideration of all the circumstances herein convincingly indicates that the present showing does not justify the granting of the instant petition.

A short recital of the circumstances involved will reflect some of the reasons why the Court has arrived at the conclusion indicated. The initial petition of the First General Bondholders for the payment of interest on their bonds has been pending for nearly a year. It has been delayed for various reasons, one of which was the opposition of the Superior and Duluth Group, who shortly after the petition was filed in November, 1945, for the first time contested the right of the First General Mortgage to be paid its interest, and requested that, in the alternative, the hearing on the application of the First General Group for the payment of interest be continued until after the Interstate Commerce Commission had filed its report and order in connection with the reorganization of the debtor. The Court has heretofore allowed interest to the First General Bondholders on the several petitions filed by that group. It was on or about December 11, 1945, that the Superior and Duluth Group for the first time filed their petition for the allowance of interest

on five interest coupons, but they likewise suggested that the hearing on their petition be delayed until after the filing of the report and order of the Interstate Commerce Commission. However, they requested that, if the hearing on the First General petitions be held, the hearing on their petition should be held concurrently. Since the filing of these petitions for the payment of interest, the report of the Examiners before whom the proceedings were had on a plan of reorganization was filed on or about August 1, 1946. This report recommended that the Commission should approve a plan of reorganization substantially along the lines as proposed by the First General Mortgage Group. Under the plan as approved by the Examiners, the claims of the holders of the Superior and Duluth Bonds would be satisfied only partially and in common stock of the reorganized company. The so-called 1939 formula was approved and the over-all capitalization of the road of the reorganized company reduced to $47,-175,664. The plan provides for the distribution of nearly $4,000,000 in cash to these bondholders. The Superior and Duluth Group filed exceptions to the report, and arguments before the Commission on the exceptions were set for November 26, 1946. In the meantime, and on October 23, 1946, the Superior and Duluth Group filed its petition for an order directing the Trustees of the debtor to use the surplus cash in their possession for the acquisition of the outstanding bonds of the debtor at a discount in accordance with one of the three plans heretofore mentioned. The hearings on the petitions for the payment of interest on First General Bonds, the Superior and Duluth Bonds, and for an order directing the Trustees to use surplus cash for the purpose of buying bonds at a discount, were concluded just a few days before the hearing of November 26, 1946, before the Interstate Commerce Commission on the plan of reorganization.

Interest payments on the First General Mortgage Bonds, as requested by the petition and amended petition of the First General Group, are now long overdue. A further delaying or denial of the payment of this interest debt, obviously justly due and with available funds on hand, would be an arbitrary abuse of discretion. Particularly would this be true if the Court refused at this time to pay the interest requested, and coupled the denial with a request for tenders from the First General Bondholders, which might well have a tendency to force or coerce unwilling bondholders to make tenders in order to realize some return on their long overdue, defaulted bonds. Such a scheme under the recited facts and circumstances over the opposition of the First General Bondholders does not appeal to this Court as equitable, fair, or consonant with the duty which this Court should fulfill as a court of equity.

The proposed plan of reorganization assumes to distribute the surplus cash on hand to the mortgage interests entitled to it, and to reserve a sufficient amount for working capital so that the road may be successfully launched as an efficient and soundly reorganized railroad. The First General Group are in accord with that plan. Not a single bondholder of that group has lent support to the present Superior and Duluth petition. Assuming, as I must do for the purpose of this proceeding, that the surplus cash constitutes impounded funds belonging to the First General Group, this Court should not lightly override their wishes in the matter. The Court is asked, over their objections, to use funds, which apparently in equity belong to them, for the purpose of buying thier bonds at a discount. Obviously, all of them could not be afforded an opportunity to dispose of their bonds on the same basis—market price plus a premium. Whether the Court would have the right to use these funds for the purpose requested, notwithstanding the opposition of the First General Group, need not now be determined. True, gross earnings, as the Court held in its order of October 2, 1946, are subject to the payment of all expenses incurred for additions and betterments before the net income is subject to the impounding lien, but the use of impounded funds with which to purchase bonds at a discount against the express desire of the apparent owners of the impounded funds is not comparable to the use of gross earnings by the Trustees so as to enable the railroad to perform its

duties to the public, to meet competition, and to enable the road to operate at a profit. The Court has not been referred to any case or precedent where a bond-buying program, as suggested herein, has been approved over the protest of the bondholders whose bonds are to be purchased and who have a lien on the funds sought to be utilized for such purpose.

Moreover, the purchase of bonds at this time with surplus funds would scuttle the plan of reorganization which is now before the Commission. The road has been in this Court for nearly 14 years. Considerable time and expense have been devoted to the preparation of the plan, and the hearings thereon, and the plan has now advanced to the stage where it is before the Commission for its approval. The belated petition of the Superior and Duluth Group on the eve of the hearing before the Commission on the plan of reorganization is not only untimely, but, if granted, would result in further delay in the presentation of a new reorganization plan, with additional expense and possibly appeals, all of which would unduly lengthen the final reorganization of this road. Without determining the merits of the Superior and Duluth petition under other circumstances, or discussing the practicability of any of the plans proposed, or of the amount of funds that could be safely characterized as surplus funds in view of the pending reorganization and needs of the road, it would seem that, in light of the circumstances recited, and on all the evidence presented, this Court has, in equity, no alternative but to deny the petition.

Orders may be presented granting the petition and amended petition of the First General Trustees for the payment of interest on their bonds as requested, with an appropriate reservation clause; denying the petition of the Superior and Duluth Group for the payment of interest on their bonds; and denying the petition of the Superior and Duluth Group for an order requiring the Trustees of the debtor to use surplus cash for the acquisition of outstanding bonds of the debtor at a discount.

Exceptions will be reserved to the Superior and Duluth Group.