MISSOURI PAC. R. CO. 5¼% SECURED SERIAL BONDHOLDERS' COMMITTEE v. THOMPSON et al.

FARWELL et al. v. THOMPSON et al.
(four cases).

Nos. 14495, 14503, 14504, 14508, 14509.

United States Court of Appeals
Eighth Circuit.

Feb. 15, 1952.

Lucien Hilmer, Washington, D. C., for appellants John V. Farwell, III, Bolton Sullivan and Cary N. Weisiger, Jr., Independent Directors of Missouri Pac. R. Co.

William H. Biggs, St. Louis, Mo., for appellant Missouri Pac. R. Co. 5¼% Secured Serial Bondholders' Committee.

Russell L. Dearmont, St. Louis, Mo., for appellee Guy A. Thompson, Trustee, Missouri Pac. R. Co., Debtor, and Trustee, International-Great Northern R. Co., Debtor.

Leonard P. Moore, New York City (Clair B. Hughes, Alan S. Kuller and Chadbourne, Parke, Whiteside, Wolff & Brophy, all of New York City, on the brief), for appellee Manufacturers Trust Co., as Corporate Trustee under First and Refunding Mortgage of Missouri Pac. R. Co.

Hugh L. M. Cole, New York City (Milbank, Tweed, Hope & Hadley, New York City, on the brief), for appellee City Bank Farmers Trust Co., as Trustee under First Mortgage dated July 1, 1922, of International Great Northern R. Co., Debtor.

Everett Paul Griffin, St. Louis, Mo. (Edward F. Colladay, Washington, D. C., and Kenneth McEwen, New York City, on the brief), for appellees Edmund Wright, Chairman, et al., constituting Protective Committee for First Mortgage Bondholders of International-Great Northern R. Co., a subsidiary debtor.

Charles W. McConaughy, New York City, Jacob Chasnoff, St. Louis, Mo., Morris D. Crawford, Jr., and Cadwalader, Wickersham & Taft, all of New York City, and Lowenhaupt, Waite, Chasnoff & Stolar, St. Louis, Mo., on behalf of appellee Group of Institutional Investors holding First and Refunding Mortgage 5% Bonds of Missouri Pac. R. Co.

Sanford H. E. Freund and Shearman & Sterling & Wright, all of New York City, on behalf of Protective Committee for holders of General Mortgage Bonds of Missouri Pac. R. Co., submitted a joint brief.

Before SANBORN and COLLET, Circuit Judges, and HULEN, District Judge.

SANBORN, Circuit Judge.

These appeals challenge primarily the legality of two orders of the District Court entered in the reorganization proceedings of the Missouri Pacific Railroad Company and its affiliates, including the International-Great Northern Railroad Company, under Section 77 of the Bankruptcy Act as amended, 11 U.S.C.A. § 205. The orders are No. 3879, entered October 5, 1951, which directs the Trustee of the Missouri Pacific Railroad Company, Debtor, to pay to the public holders of First and Refunding Mortgage Bonds of the Missouri Pacific Railroad Company $33,478,575, the equivalent of three years' interest upon their bonds, and No. 3880, entered October 8, 1951, directing the Trustee of International-Great Northern Railroad Company, Debtor, to pay to the holders of International-Great Northern Railroad Company First Mortgage Bonds $1,610,000, the equivalent of one year's interest upon those bonds.

The Trustee, on September 6, 1951, filed petitions for the orders in suit. Each of the petitions represented, in substance, that available funds in the hands of the Trustee, derived from the earnings of property constituting the security for the mortgage bonds referred to in the petition, were sufficient to warrant the payment suggested; that the Interstate Commerce Commission had approved a "Modified Plan of Reorganization of Debtor Companies"; and that on October 3, 1950, the court had approved the plan. See, In re Missouri Pacific Railroad Company, D.C., 93 F.Supp. 832; affirmed, State of Texas v. Group of Institutional Investors, 8 Cir., 191 F.2d 265. The Trustee proposed that the payment to the bondholders be received by them upon the following conditions:

"(1) If said proposed Modified Plan of Reorganization is finally approved and confirmed in these proceedings, said payment to said bondholders shall be credited as provided in Section A, entitled 'Cash Distributions,' of the Fifth Supplemental Order of

the Interstate Commerce Commission dated December 29, 1949.

"(2) If said Modified Plan of Reorganization as now proposed is changed or modified, or if any other or different Plan of Reorganization is finally approved and confirmed herein, then said payment shall be applied or credited as may be appropriate in the light of any Plan of Reorganization which may be finally approved and confirmed in these proceedings.

"(3) If a Plan of Reorganization is not finally approved and confirmed in these proceedings, then said payment shall be credited as the Court may hereafter direct."

The appellants, by appropriate pleadings, resisted the petitions of the Trustee. They alleged that a petition under 11 U.S.C.A. § 208 had on July 13, 1951, been filed by parties in interest and referred by the court to the Interstate Commerce Commission; that 11 U.S.C.A. § 208(a) (5)[1] provides that, upon the filing of such a petition, "all further proceedings for confirmation of the plan shall be suspended pending disposition of the petition by the Commission and certification of its action thereon to the court"; that the purpose of this provision is to preserve the status quo of the reorganization proceedings in order to afford the Commission a full, unrestricted opportunity to review the plan in the light of such changes, facts and developments as have occurred since the Commission's approval of the plan; that, under § 208(b), the "changes, facts, and developments" to be considered by the Commission include "retirements and purchases of debt, including retirements and purchases at a discount that have been made or that can reasonably be made"; and that such retirements and purchases depend largely upon the amount of cash in the debtor estates. The appellants also asserted that the filing of the Trustee's petitions in September, 1951, for authority to make interest payments and the assignment of the petitions for hearing were prejudicial to the Commission's statutory consideration of cash that reasonably can be used to retire or purchase debt at a discount; that the petitions of the Trustee upon their face recognize that the proposed expenditures are consistent with and in furtherance of the present approved plan of reorganization and yet might be inconsistent with a changed or modified plan which the Commission might approve if it should determine that, because of changed conditions, the cash which the Trustee proposed to use for interest payments ought to be used to retire or purchase debt at a discount.

The appellants asked that the Trustee's petitions for authority to make the suggested payments be dismissed or denied, or that the hearing thereon be postponed, or that decision thereon be deferred until the Commission had decided the matters referred to it by the court's order of July 13, 1951.

The issues raised by the Trustee's petitions and the responses of the appellants were heard by the court on September 28, 1951. Evidence was taken which showed that the principal amount of the First and Refunding Mortgage Bonds of the Missouri Pacific Railroad Company held by the public was $223,190,500, that on December 31, 1951, matured and unpaid interest on these bonds would be $96,105,963, and that the Trustee had available in cash or its equivalent $85,340,917, representing earnings of the property securing the bonds. With respect to the International-Great Northern Railroad Company's First Mortgage Bonds, it appears from the record that the principal amount outstanding was $28,750,000, upon which matured interest as of December

---

1. "§ 208. *Petition subsequent to certification of reorganization plan—Duty of Commission to report changes, developments, etc., to Court; remand of plan to Commission; procedure of subsequent proceedings; referral of petition*

"(a) Notwithstanding any other provision of law—

     \*        \*        \*        \*        \*

"(5) each petition filed under the provisions of paragraph (1) or paragraph (3) of this subsection shall be filed with the court before which is pending the plan which is the subject of the petition and such petition shall be referred by the court to the Commission. Upon the filing of such petition with the court all further proceedings for confirmation of the plan shall be suspended pending disposition of the petition by the Commission and certification of its action thereon to the court."

31, 1951, amounted to approximately $15,-000,000, and that the Trustee had available at the end of August, 1951, in cash or its equivalent, derived from earnings, $7,462,-872.

The District Court ruled that the Trustee's petitions and the hearing thereon were not proceedings which were suspended by 11 U.S.C.A. § 208(a) (5) pending the disposition by the Interstate Commerce Commission of the petition filed under 11 U.S. C.A. § 208, and that the petitions of the Trustee should be granted. Orders No. 3879 and 3880 were entered, in conformity with the petitions of the Trustee. These appeals followed.

It is not necessary to detail the testimony adduced at the hearing or to refer to the findings of fact supporting the orders, since it is conceded by the appellants that the orders are valid unless 11 U.S.C.A. § 208(a) (5) precluded the court from making them.

■ The appellants recognize the general rule that in proceedings for the reorganization of a railroad, the court may, in the exercise of a sound discretion, authorize the payment of matured interest or its equivalent to mortgage bondholders out of available funds earned by the property constituting the security for their bonds. In re Central of Georgia Railway Co., D.C.S.D.Ga., 48 F.Supp. 445, 451, affirmed Central Hanover Bank & Trust Co. v. Callaway, 5 Cir., 135 F.2d 592, 595; In re Wisconsin Central R. Co., D.C.Minn., 72 F.Supp. 669, 672–673; and compare, Application of Realty Associates Securities Corp., D.C.E.D.N.Y., 58 F. Supp. 220. This rule was recognized by this Court in United States Trust Co. of New York v. Zelle, 8 Cir., 191 F.2d 822, 823, in which we said with respect to interest payments to first mortgage bondholders of the Wisconsin Central Railway Company: "The First Mortgage bonds being amply secured, interest was paid during the period of bankruptcy (although not always at regular intervals) at the rate of 4 per cent up to July 1, 1949, the date of maturity of the bonds."

In the instant case, interest on the bonds in suit has been paid from time to time under orders of the court. The interest payments made plus those authorized by Orders 3879 and 3880 will give to the bondholders during the pendency of the reorganization proceedings less than the contract rate and less than 4 per cent interest on their bonds.

The appellants assert that the orders in suit not only conform to the plan of reorganization, but are in furtherance of it, and are in derogation of the powers and duties of the Interstate Commerce Commission under § 208(b). They contend that the orders constitute a partial execution of the plan; that the orders and the proceedings upon which they are based were "further proceedings for confirmation of the plan" within the meaning of § 208(a) (5); and that the court was without jurisdiction or discretion to enter them.

The Trustee and those who support his position argue that § 208(a) (5) suspends no proceedings except those "for confirmation of the plan"; that the orders and the proceedings about which the appellants complain, while consistent with the plan, had no tendency to either confirm or disaffirm it; that they were administrative proceedings and their sole purpose was to authorize the Trustee, in the orderly administration of the estates, to make payments on account of interest to mortgage bondholders out of available funds in his hands, upon which the bondholders have a lien and to which they are, in equity, entitled.

Under the appellants' construction of the suspension provision of § 208(a) (5), the District Court would, during the entire course of a reorganization proceeding, have discretion to authorize the payment of interest on first mortgage bonds out of available funds earned by the property securing the bonds, except only during the period when a petition under § 208(a) (1) or § 208(a) (3) was pending before the Interstate Commerce Commission. During the pendency of such a petition, the court, according to the appellants' theory, becomes reduced to the status of a mere custodian of the property of the debtor, with authority to pay only the necessary expenses of operation and maintenance of the property.

Under both § 208(a) (1) and § 208(a) (3), it is the duty of the Commission, upon the filing of a petition by a party in interest, to report to the court "any changes,

facts, or developments" which in the opinion of the Commission make it necessary or expedient for the Commission to re-examine or reconsider "and, if necessary, to revise such plan" of reorganization in order to make it fair and equitable. It is only upon the filing of a report by the Commission, in effect calling for the return of the plan for reconsideration and possible revision, that the plan is to be remanded by the court to the Commission.

The suspension of "proceedings for confirmation" under § 208(a) (5) is "pending disposition of the petition by the Commission and certification of its action thereon to the court." Until the Commission has certified its action on the petition to the court, the plan is before the court; and, were it not for the suspension of confirmation proceedings provided for by § 208(a) (5), the court might have jurisdiction to confirm the plan despite the pendency of the petition before the Commission.

Section 208(b), relating to the making of a supplemental report and order of the Commission, refers to a "plan so returned to the Commission by the court," and specifies the changes, facts and developments to be considered by the Commission with respect to a possible revision of the returned plan. These include "retirements and purchases of debt, including retirements and purchases at a discount that have been made or that can reasonably be made". Section 208(b) contains no provision suspending any of the functions of the court after the plan has been returned to the Commission for possible revision.

▇ It seems clear that what Congress had in mind in providing for the suspension of proceedings for confirmation of a plan during the pendency of a petition under § 208(a) (1) or § 208(a) (3) was not to deprive the court of any of its administrative functions, but to avoid the possibility of confirmation by the court of an approved but unconfirmed plan until the Commission had determined whether or not the plan, because of changed conditions, should be returned to it for possible revision. Obviously, after a plan has been returned to, and is before, the Commission for reconsideration,

it is not subject to confirmation by the court.

The fear expressed by the appellants that, unless the suspension of proceedings for confirmation of a plan is construed to mean that the cash position of the debtor's estate is virtually frozen by the filing of a petition under § 208(a) (1) or § 208(a) (3), the functions of the Interstate Commerce Commission in formulating a revised plan may be seriously impaired or completely frustrated, is, we think, largely imaginary. There is no reason to suppose that a District Court would, or could, authorize or direct payments to be made which are inconsistent with an approved plan of reorganization or which are shown to be so extraordinary as to constitute an obstacle to any reasonably probable revision of the plan by the Interstate Commerce Commission in the light of changed conditions.

We are convinced that Congress did not intend that the words "further proceedings for confirmation of the plan" should be taken or understood to mean further administrative proceedings which conform to the plan or which might conceivably be regarded as inconsistent with any revised plan the Commission might possibly have power to approve. No one familiar with reorganization proceedings under the Bankruptcy Act can have any illusions as to what the words "proceedings for confirmation of the plan" mean. The language used by Congress in § 208(a) (5) must be given its plain meaning, which, in our opinion, is that a plan of reorganization, although approved, shall not be confirmed and no proceedings to secure its confirmation shall be taken after a petition under § 208(a) (1) or § 208(a) (3) has been filed, until the ·Commission has ruled upon the petition and has certified its action thereon to the court.

Assuming that recourse properly may be had to the legislative history of § 208, we find nothing in that history which indicates that Congress intended anything more than what the language of that section literally imports. In Crooks v. Harrelson, 282 U. S. 55, at page 60, 51 S.Ct. 49, at page 50,

75 L.Ed. 156, the Supreme Court said: "Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. Inhabitants of Monson v. Chester, 22 Pick. (Mass.) 385, 387. It is not enough. merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts. See In re Alma Spinning Company, L.R. 16 Ch.Div. 681, 686; King v. Commissioners, 5 A. & E., 804, 816; Abley v. Dale, L.J. (1851) N.S.Pt. 2, Vol. 20, 233, 235. And see generally Chung Fook v. White, 264 U.S. 443, 445, 44 S. Ct. 361, 68 L.Ed. 781; Commissioner of Immigration v. Gottlieb, 265 U.S. 310, 313, 44 S.Ct. 528, 68 L.Ed. 1031." See, also, Pillsbury v. United Engineering Company, 342 U.S. 197, 72 S.Ct. 223; Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 959, 93 L.Ed. 1207; Caminetti v. United States, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442; Mackenzie v. Hare, 239 U.S. 299, 308, 36 S.Ct. 106, 60 L.Ed. 297; Foley Securities Corporation v. Commissioner of Internal Revenue, 8 Cir., 106 F.2d 731, 734–735; Warner v. Dworsky, 8 Cir., 194 F.2d 277.

If Congress had intended that, upon the filing of a petition under § 208(a) (1) or § 208(a) (3), the funds in the hands of the court were to be frozen and the court reduced to the status of a mere operating custodian until the Commission certified to the court the Commission's action on the petition and had finally determined how, if at all, the plan which it had formerly approved was to be revised, Congress would undoubtedly have so provided in plain and understandable words. We note that the appellants have had no difficulty in finding appropriate language to express what they contend Congress meant by the language of the suspension provision of § 208(a) (5).

■ It is our conclusion that the proceedings culminating in the administrative orders No. 3879 and No. 3880 were not "further proceedings for confirmation of the plan" and were not suspended by § 208(a) (5), and that the orders are valid.

These appeals also cover Orders 3879–A and 3880–A. These orders directed the Trustee to make the payments specified in Orders 3879 and 3880 by noon of December 10, 1951, notwithstanding the appeals from those orders, unless the appellants filed supersedeas bonds in a large amount. Since this Court stayed the payments under Orders 3879 and 3880 pending the appeals therefrom, the orders requiring supersedeas, assuming that they were appealable, have become moot.

Orders No. 3879 and No. 3880 are affirmed. The appeals from Orders No. 3879–A and No. 3880–A are dismissed. The order of this Court granting the appellants a stay pending the determination of their appeals is vacated.