In the Matter of BOSTON AND MAINE
CORPORATION, Debtor.

No. 70–250–M.

United States District Court,
D. Massachusetts.

March 16, 1979.

Order March 19, 1979.

See also D.C., 468 F.Supp. 996.

Charles W. Mulcahy, Jr., Mulcahy & Mulcahy, Boston, Mass., for the trustees.

Joseph H. B. Edwards, Paul J. Lambert, Diane M. Kottmyer, Bingham, Dana & Gould, Boston, Mass., for first mortgage trustees.

Paul B. Galvani, Ropes & Gray, Boston, Mass., for Maine Cent. R. Co., and the Portland Terminal Co.

John T. Collins, Sherburne, Powers & Needham, Boston, Mass., for the Chesapeake & Ohio Ry. Co., the Baltimore & Ohio Ry. Co., and Western Maryland Ry.

Joseph Bartlett, Edward T. Robinson, Gaston Snow and Ely Bartlett, Boston, Mass., for the Madison Fund.

*Memorandum on Debtor's Trustees' Petition for Authority to make Tender Offer*

FRANK J. MURRAY, Senior District Judge.

The Interstate Commerce Commission (Commission) by decision of June 23, 1978, has approved with certain modification, the Trustees' amended petition for authority to make tender offer for the 6% per annum first mortgage bonds and for reduction of first mortgage debt, and has certified to this court its approval of the tender offer proposal as an integral part of the First Step of the Trustees' Plan of Reorganization, together with a transcript of the proceedings before it, and a copy of its report and order, pursuant to Section 77(d) of the Bankruptcy Act. 11 U.S.C. § 205(d).

Following the filing of the amended petition with the court an information statement concerning the proposed tender offer was prepared by the Trustees and filed with the clerk of this court on September 21, 1977. Notice was published in The Wall Street Journal (national edition), The New York Times, The Boston Globe, The Monitor (Concord, New Hampshire), The Portland (Maine) Press Herald, and The Burlington (Vermont) Free Press, pursuant to the order of the court, of the availability of the information statement at the office of the debtor at 150 Causeway Street, Boston, Massachusetts. On October 23, 1978 an updated information statement was prepared by the Trustees and filed with the clerk.

On October 18, 1978, following certification on October 11, 1978 of the Commission's order and the transcript, the court ordered notice under Section 77(e) to be published in the newspapers mentioned above, and to be given all parties in interest of the time within which objections could be filed to the proposed tender offer, and of the hearing scheduled for November 15, 1978 of the amended petition for authority to make tender offer and any objections thereto. Objections were filed by certain parties.[1] After hearing the arguments in support of and in opposition to the amended petition and the objections, and considering the report and transcript of the proceedings before the Commission, and the decision of the court on the Trustees' petition for classification of creditors and stockholders pursuant to Section 77(c)(7) [11 U.S.C. § 205(c)(7)],[2] the court hereby approves the proposed tender offer in accordance with the provisions of this memorandum, as part of the First Step of the Trustees' Plan of Reorganization.

The order of the Commission dated June 23, 1978, as supplemented September 11, 1978, authorized the Trustees to make a tender offer to redeem first mortgage bonds out of the restricted funds of the Debtor to the extent of no more than $33.060 million, at a price of $800 per bond of $1000 par value. In reaching its decision the Commission concluded that approval of the tender offer would be in the best inter-

---

1. Objections were filed by the First Mortgage Trustees, the Maine Central Railroad, the Portland Terminal Co., the Chesapeake and Ohio R. Co., the Baltimore and Ohio R. Co., Western Maryland Ry., and the Madison Fund. Hospers Packing Company submitted a late-filed objection.

2. *See* the court's Memorandum on the Trustees' Petition to Classify Creditors and Stockholders, dated March 12, 1979.

ests of the railroad, that the tender offer has the support of the bondholders, and that it implements a financial restructuring opportunity afforded by the First Step of the Trustees' Plan of Reorganization.[3]

## I

The Trustees by their amended petition seek authority to acquire $37.0 million par value of tendered bonds with $32.0 million drawn down from the restricted funds, which would represent a price of $850 per bond of $1000 par value. Under the Trustees' proposal the tendering bondholder would be required to waive all claims to interest accrued on the principal and unpaid interest. The proposal also included the following conditions. In the case of coupon bonds the tendering bondholders would be required to tender the February 1, 1970 and the July 1, 1970 coupons without additional compensation. Should more than $37.0 million par value of bonds be tendered, the Trustees seek authority to elect, but not be obligated, to purchase all of the tendered bonds up to the total of outstanding bonds. Should the Trustees elect to purchase less than all bonds tendered, the Trustees seek authority to purchase from the tendering bondholders on a "pro rata" basis.

During the proceedings relative to the tender offer the amount of first mortgage bonds outstanding has been $46,337,876. Accrued interest in default on the bonds amounted to approximately $22.0 million in December 1977. The amount of the Debt-

or's restricted funds approximated $52.8 million when the matter was referred to the Commission in October 1977. At the hearing before the Administrative Law Judge, to whom the Commission initially assigned the tender offer proposal, the Trustees conceded that certain liabilities aggregating $13.536 million [4] have priority over the first mortgage bonds. At that time there were also potential additional priority claims amounting to $16.4 million.[5] After analyzing the impact of the proposed tender offer on the restricted funds, the Administrative Law Judge (a) determined that reserves should be set up to meet both the conceded and the potential priority claims, that $5.0 million should be reserved for deferred maintenance, improvements and modernization, and (b) concluded that as a result of these reserves there would be available approximately $20.5 million of restricted funds for the proposed tender offer.

In the Commission's final decision of June 23, 1978, it disallowed the item of $5.0 million reserved by the Administrative Law Judge for deferred maintenance and improvements, and $7.560 million reserved for claims for personal injury, freight loss and damage, and administrative expenses. The Commission concluded that with the disallowance of these items aggregating $12.560 million there would be available $33.060 million of restricted funds for the proposed tender offer. No other claims reserved by the Administrative Law Judge were disallowed.[6] The Commission accepted the

---

**3.** *See* Memorandum and Order of the court dated November 30, 1976.

**4.** The conceded priority claims were:

| | |
|---|---|
| Total real estate property taxes less amount due from MBTA | $ 5.976 million |
| Personal injury claims | 3.479 million |
| Freight damage and loss claims | 2.442 million |
| Administration and other expenses | 1.639 million |
| | $13.536 million |

**5.** The potential additional priority claims were:

| | |
|---|---|
| Per diem claims | $ 8.1 million |
| Amount of other presently asserted priority claims based on the six- | |

| | |
|---|---|
| month and necessity of payment rules | $ 4.6 million |
| One year tax bills presently being rendered by Massachusetts, New York, New Hampshire, Maine, Vermont | 1.7 million |
| Present accrual (to September 30, 1977) of interest on taxes already due | 2.0 million |
| | $16.4 million |

The Trustees and the bondholders dispute the priority of the claims for per diem charges and claims under the so-called "six months" and "necessity of payment" rules.

**6.** In its final decision the Commission pointed out that should the per diem and six months rule claims be accorded no priority by the court, ". . . the reserve in the Restricted

judgment of the Administrative Law Judge that the Trustees should not be authorized to pay more than $800 per bond of $1000 par value. While it is not explicitly stated in the Commission's final decision, the court interprets the decision as approving the conditions set forth in the Trustees' petition concerning waiver by bondholders of interest, and the authority of the Trustees to elect to acquire all of the outstanding bonds or, alternatively, to purchase less than all bonds tendered on a "pro rata" basis.

## II

At the hearing before the court on November 15, 1978, the Trustees assented to the Commission's modification of the proposal to make tender offer set forth in the Trustees' amended petition. Accordingly, the Trustees now seek authority to propose a tender offer to purchase $37.0 million principal amount of first mortgage bonds at the price of $800 per bond of $1000 par value, and to that end request authority to draw down not more than $30.250 million of restricted funds. This proposal, as before, would require the tendering bondholder to waive all claims to interest accrued on the principal of the bond and all unpaid interest.

At the time of the hearing the amount of Debtor's restricted funds was estimated to be $55.0 million, after deducting the amounts required to complete the settlement of the claim of the Northern Railroad and the settlement of certain real estate tax claims. The Trustees acknowledged the

priority over the bondholders of claims amounting to $12.348 million as of June 30, 1978. They also detailed other potential claims for priority over the bondholders amounting to $15.424 million, but they disputed $11.5 million of this total for per diem charges of $8.1 million, and for claims under the "six months" rule and "necessity of payment" rule of $3.4 million.[7] The aggregate of these items of conceded and potential priority is $27.772 million, which, if reserved in the restricted funds, would leave a balance of restricted funds amounting to $27.228 million. However, if the reserve for the conceded priority items were reduced by $6.791 million, the items disallowed by the Commission for reserves against restricted funds for claims for personal injuries, freight loss and damage, and administration expenses,[8] and if the reserve for potential priority items were also reduced by $8.5 million,[9] the amount of the claims for per diem charges and claims under the "necessity of payment" rule, which this court found were not entitled to priority status over the bondholders,[10] the balance of restricted funds would then amount to $42.519 million.

## III

A tender offer by a railroad in reorganization to accomplish reduction of secured debt is not a usual step in the ongoing process of seeking to rehabilitate a debtor under a plan of reorganization by a readjustment of its debt structure in the

funds for these matters could properly be removed by the Reorganization Court absent other considerations." 354 ICC 621, 628.

7. Claims under the six months and necessity of payment rules total $4.6 million as shown in the Trustees' Information Statement and in the decisions of the Administrative Law Judge and the ICC. However, the stipulation filed in connection with the Trustees' Petition to Classify Creditors and Stockholders states that those claims total $3.4 million ($3 million under the six months rule and $400,000 under the necessity of payment rule). At the November 15, 1978 hearing, one of the Trustees of the Debtor testified that the more accurate figure was $3.4 million.

8. These items which were disallowed by the Commission totalled $7.560 million according to the Information Statement available to the Commission. In the revised Information Statement filed with the court on October 23, 1978 those items are valued at $6.791 million.

9. The court has not reduced the reserves by the amount of the six months claims of $3 million. *See* Memorandum of the court on the Trustees' Petition to Classify, *supra* note 2 at 6, where it is pointed out that the time for final determination of six months claims is the date of distribution of the Debtor's estate.

10. *See* Memorandum of the court on the Trustees' Petition to Classify, *supra* note 2.

interests of creditors and stockholders and the public interest. However, there is no language in Section 77 which prohibits the interim certification by the Commission to the court of such a step. The role of the court after Commission approval and certification is independently to examine the tender offer proposal and to approve it if satisfied that it meets the requirements of Section 77(e) of the Bankruptcy Act. 11 U.S.C. § 205(e).

The proposed tender offer here is an integral part of the First Step of the Trustees' Plan of Reorganization. Acquisition of approximately $37.0 million principal amount of first mortgage bonds would result in a favorable increase in the Debtor's net worth. The pending application submitted by the Trustees to the Federal Railroad Administration for a loan of $25.9 million seems likely to be granted to the extent of $15.0 million on the basis of the Debtor's present net worth, and the prospects for receiving the entire loan applied for would be enhanced by a successful tender offer. The reduction of secured debt and interest resulting from the tender offer should improve the Debtor's capacity to attract loans from private lending institutions. Despite the history of negative annual net railway operating income during the reorganization period, the reduction of secured debt and interest by a successful tender offer utilizing restricted funds must be considered a constructive step toward ultimate reorganization of the railroad.

All witnesses who appeared before the Administrative Law Judge on the issue of the tender price for the bonds testified in substance that 85% (or $850 per bond of $1000 par value) would be a fair and equitable price. There is no suggestion in the record that the witnesses were not adequately qualified to offer opinions as to the price that would attract bondholders to tender bonds, and thus make the tender offer a success. The Administrative Law Judge pointed out in the Initial Decision that "It is conceded by all parties that there is no one right price. A price lower than $850 could still be considered a reasonable price". In finding that the price of $800

per bond of $1000 par value was fair and equitable the Administrative Law Judge considered, among other matters, the Trustees' record of settling claims for real estate taxes and unpaid interest, and compared that settlement rate in terms of percentage of the tax claim with the ratio of the tender price of $800 to the principal and accrued interest on a first mortgage bond. The Commission accepted the tender offer price of $800 as set forth in the Initial Decision, commenting that "no one objects to this determination". *Boston & Maine Corp. Reorganization—Tender Offer*, 354 ICC 621, 624.

At the hearing before the court the Madison Fund, Inc., holder of $10.3 million of the outstanding first mortgage bonds, argued that the court could and should increase the tender offer price to $850 per bond of $1000 par value in light of the Commission's grant of authority to the Trustees to use up to $33.060 million out of the restricted funds. No other bondholder supported the position of the Madison Fund, Inc., at the hearing before the court.

The stated position of the Madison Fund, Inc. urging the court to increase the tender offer price raises a question of jurisdiction of the Commission over the tender offer, and although issues of jurisdiction are ordinarily met at the threshold, the court has reserved that question until now. The court agrees with the Commission that the tender offer proposal is an integral part of the Trustees' Plan of Reorganization and significantly affects the prospects for ultimate reorganization of the railroad. It is not merely a settlement of the claims of bondholders, which the court would be authorized to approve in advance of the structuring of a final plan of reorganization. Thus the primary jurisdiction to consider and act on the tender offer proposal is in the Commission. Should the court disapprove the tender offer phase of the Trustees' plan of rehabilitation, the alternatives would be to dismiss the petition or to refer the matter back to the Commission. Section 77(e). Neither alternative is attractive

to any bondholder. Wholly apart from the issue of jurisdiction, and its procedural options, the court finds under all the circumstances that the terms of the tender offer set forth in the order of the Commission are fair and equitable and would be in the best interests of the Debtor.

## IV

■ In the amended petition the Trustees request authority to draw down from the restricted funds sufficient moneys for payment of the tendering bondholders' obligations, if any, to the First Mortgage Trustees for services and expenses incurred in representing the interests of the bondholders during the reorganization proceedings. The First Mortgage Trustees also filed their separate petition seeking payment of their fees and expenses. Notice of the hearing of the latter petition was served concurrently with notice of the hearing on the proposed tender offer. On return of the respective orders of notice both petitions were heard by the court.

The First Mortgage Trustees propose to petition the Commission, pursuant to Section 77(c)(12) of the Bankruptcy Act, for an allowance of interim compensation to be paid out of the Debtor's estate. In addition, they ask the court to authorize a draw down from restricted funds to set up a reserve to cover any amount due from bondholders not allowed and paid pursuant to Section 77(c)(12). The reserve requested to cover the claim against the tendering bondholders for compensation is $450,000.

The issue whether the court may authorize compensation to the First Mortgage Trustees beyond the limits approved by the Commission is not now before the court; neither is the issue of the reasonableness of the compensation requested. However, the court finds the request of the First Mortgage Trustees to set aside a reserve of $450,000 in the restricted funds account a reasonable measure to preserve the status quo of available funds should the First Mortgage Trustees establish their right to compensation in accordance with their petition, and the court will enter an appropriate

order in this proceeding requiring the Debtor's Trustees to set up such reserve.

## V

■ Madison Fund, Inc., has requested the court to direct the Trustees to pay one year's interest to all first mortgage bondholders with funds from the earnings of the restricted funds. The request is based on the delay that has occurred since the filing of the Initial Decision. The argument proceeds that in the interim over $3.4 million in interest has been earned on the proceeds of the sales of property subject to the bondholders' lien, and that an amount equivalent to one year's interest on the outstanding bonds would require no more than $2.8 million. The court finds this argument an appealing one. Further, it finds that authority exists in the court "in the exercise of a sound discretion, [to] authorize the payment of matured interest or its equivalent to mortgage bondholders out of available funds earned by the property constituting the security for their bonds". *Missouri Pac. R. Co. 5¼% Secured S.B.C. v. Thompson,* 194 F.2d 799, 802 (8th Cir. 1952). However, the request of the Madison Fund, Inc., has not been the subject of a petition filed with the court with notice to all parties in interest and heard by the court after opportunity to parties to brief the issues that inhere in the request, particularly the factors to be considered in the court's exercise of discretion. There is nothing to prevent interested parties from pursuing such a course presently. At this juncture, however, the request must be denied without prejudice.

In accordance with this memorandum an order shall enter.

## ORDER

### on Trustees' Petition for Authority to make Tender Offer

After hearing the amended petition of the Debtor's Trustees for authority to make tender offer for the Debtor's 6% per annum first mortgage bonds and for reduction of first mortgage debt, and the objections

thereto, and in accordance with the court's memorandum of March 16, 1979, the court orders as follows:

1. The objections on file with the court on November 15, 1978 to the amended petition of the Debtor's Trustees are hereby overruled.

2. The order of the Interstate Commerce Commission of June 23, 1978, as supplemented September 11, 1978, authorizing the Debtor's Trustees to make a tender offer to redeem first mortgage bonds out of the restricted funds held by the Trustees to the extent of no more than $33.060 million, at a price of $800 per bond of $1000 par value, is hereby approved.

3. The Trustees of the Debtor are hereby authorized to invite holders of first mortgage bonds to tender their bonds at a price of $800 per bond of $1000 par value, net, such tender to be submitted to the Trustees in writing by a date to be announced by the Trustees, and to be a date not more than 75 days from the date of this order.

4. The Trustees of the Debtor are hereby authorized to accept such tenders by a date to be announced by the Trustees, and to be a date not more than 105 days from the date of this order, and to draw down from the restricted funds not more than $33.060 million (a) to effect the purchase of the tenders which are accepted, and (b) to pay the reasonable, direct expenses of the tender offer including the expenses of preparing, mailing and publishing notices, printing and circulating information statements, depositary, exchange agency, legal, accounting and similar expenses.

5. The Trustees of the Debtor shall set aside and maintain a reserve in the restricted funds account of the Debtor in the amount of $3.0 million to provide against liability, if any, on account of the "six months claims", so called.

6. The Trustees of the Debtor shall set aside and maintain a reserve in the restricted funds account of the Debtor in the amount of $450,000 for the amount, if any, to be later determined of the reasonable compensation due First Mortgage Trustees for services rendered on behalf of tendering bondholders.