BOWNES, Circuit Judge.
 

 This appeal focuses on another chapter
 
 [1]
 
 in the continuing effort to reorganize the Boston and Maine Corporation. This one involves the reduction of corporate debt through the purchase of first mortgage bonds. The issues presented are: (1) whether the district court supervising the reorganization (the Reorganization Court) abused its discretion in dismissing bondholders’ petitions requesting payment of interest
 
 [2]
 
 on all first mortgage bonds for the twelve to fifteen months of delay in approval of the bond tender offer caused by the assertion of Interstate Commerce Corn-
 
 *139
 
 mission jurisdiction over the tender offer, and (2) whether the Reorganization Court made adequate findings of fact and conclusions of law in dismissing the petitions.
 

 Reorganization of the Boston and Maine Corporation (the Railroad) was initiated in 1970 by the filing and acceptance of involuntary petitions pursuant to section 77 of the Bankruptcy Act, 11 U.S.C. § 205. Following the appointment of Reorganization Trustees (the Trustees), the Trustees developed a two-step plan for the resuscitation of the Railroad. Step one called for the sale of certain commuter lines and other real estate and the deposit of the proceeds in a Reserve Fund which would be subject to the same liens to which the real estate had been subject. Step two called for the use of the monies in the Reserve Fund to satisfy a portion of the bonded indebtedness of the Railroad and thereby to permit a reorganization of its capital structure on a 100% equity basis. Despite the fact that the Railroad’s failure to show a probability of profitable operation has precluded formal adoption of the plan,
 
 [3]
 
 the Trustees have proceeded with its implementation. With the approval of the Interstate Commerce Commission (the Commission) and the Reorganization Court, the commuter lines and real estate were sold, creating a Reserve Fund balance of $52,400,000 as of June 30, 1977.
 

 By petition filed in April and amended in July of 1977, the Trustees initiated step two of the plan, requesting authority from the Reorganization Court to make a tender offer of $850 per $1,000 par value of the first mortgage bonds (the bonds) and to draw down the Reserve Fund by up to $32,000,-000 to finance the tender offer. On October 27, 1977, the Commission notified the Reorganization Court that, because the tender offer was integral to the reorganization, it had primary jurisdiction over the petition. The Commission referred the petition to an Administrative Law Judge who approved a tender offer of $800 per $1,000 par value of the bonds and a maximum draw down of the Reserve Fund of $20,500,-000. On June 23, 1978, the Commission adopted the $800 tender offer limitation, but increased the maximum Reserve Fund draw down to $33,060,000. Boston and Maine
 
 Corporation-Tender Offer,
 
 354 I.C.C. 621 (1978).
 

 At the November 15, 1978, Reorganization Court hearing on the petition, The Madison Fund, Inc. (Madison), holders of $10,300,000 in bonds, urged for the first time that at least one year’s interest be paid to compensate bondholders for the delay in approval of the tender offer. In its March 19, 1979, Memorandum finally approving the tender offer, the Reorganization Court described the request as “appealing,” but denied the request without prejudice because it had not been noticed to and briefed by all parties in interest.
 
 In re Boston and Maine Corp.,
 
 468 F.Supp. 1010, 1015 (D.Mass.1979).
 

 On March 26, 1979, Madison petitioned the Reorganization Court for payment of six percent interest for fifteen months on all first mortgage bonds, whether tendered or not. The next day, the First Mortgage Indenture Trustees, holders of the mortgage securing the approximately $46,600,-000 in bonds, filed a similar petition requesting payment of interest for twelve months. If approved, the petitions would have required payment of approximately $3,500,000 and $2,800,000 respectively. The petitions were opposed by the Trustees, the Second Mortgage Indenture Trustees, the' Commonwealth of Massachusetts, the City of Cambridge, Massachusetts, and a number of railroads which were creditors of the Railroad.
 

 After hearing argument and considering a stipulation of facts entered into by most of the parties, the Reorganization Court dismissed the petitions. In its decision, the Reorganization Court noted the instability of earnings experienced by the Railroad, the business judgment of the Trustees that
 
 *140
 
 payment of interest would not be in the best interests of the Railroad, the potential for disruption of the established pattern of settlement of priority property tax claims and the possibility that a reordering of priorities pursuant to pending litigation would further deplete the Reserve Fund.
 

 The Jurisdictional Issue
 

 We deal first with appellee’s contention that the Reorganization Court should have referred the interest petitions to the Commission for consideration as it did with the tender offer petition and that jurisdictional constraints require that we remand for such action. The Reorganization Court declined to reach this issue, effectively ruling that, even if the petitions were referred to and approved by the Commission, the Reorganization Court would not approve the petition. We find no error in the Reorganization Court’s resolution of this issue and rule that the complimentary jurisdiction of the Commission over reorganization matters is no bar to this appeal.
 

 As we have noted in the past, “[t]he twin objects of § 77 are to conserve the debtor’s assets for the benefit of all creditors and to preserve the ongoing railroad in the interest of the public.”
 
 In re Boston and Maine Corp.,
 
 484 F.2d 369, 374 (1st Cir. 1973). To guarantee achievement of these objectives, Congress has apportioned responsibility for the management and reorganization of insolvent railroads among three entities: the Commission, the Reorganization Court and the Reorganization Trustees. Under this scheme, the Trustee is given “all the powers of a trustee in bankruptcy, including the power to operate the business of the debtor railroad, ‘subject to the control of the judge and the jurisdiction of the Commission’.”
 
 In re Boston and Maine Corp., 600
 
 F.2d 307, 309 (1st Cir. 1979). The Reorganization Court “establishes the rights and priorities of creditors presenting claims against the estate and determines when those claims shall be paid.”
 
 Id.
 
 at 310. Finally, the Commission, the one partner in the reorganization expert in rail transportation matters, has “primary responsibility for the development of a suitable plan . . . subject to a degree of participation by the court.”
 
 Ecker v. Western Pac. R. Corp.,
 
 318 U.S. 448, 468, 63 S.Ct. 692, 705, 87 L.Ed. 892 (1943);
 
 In re Boston and Maine Corp.,
 
 484 F.2d at 372. In this instance, the petition requested payment of money to past and present creditors of the debtor, a matter clearly within the province of the Reorganization Court. Referral to the Commission was required only if two conditions were met: (1) the Reorganization Court approved the payment, and (2) the payment was integral to the reorganization plan, see
 
 In re Penn Central Transportation Co.,
 
 358 F.Supp. 154 (E.D.Pa.1973). Since the Reorganization Court disapproved of the payment, there was no need to determine whether the payment was integral to the reorganization.
 

 Abuse of Discretion
 

 There is no doubt that a Reorganization Court may, “in the exercise of a sound discretion, authorize the payment of matured interest or its equivalent to mortgage bondholders out of available funds earned by the property constituting the security for their bonds.”
 
 Missouri Pac. R. Co. 5¼% Secured S. B. C. v. Thompson,
 
 194 F.2d 799, 802 (8th Cir. 1952).
 
 Accord, Central Hanover Bank & Trust Co.
 
 v.
 
 Callaway,
 
 135 F.2d 592 (5th Cir. 1943);
 
 In re Wisconsin Cent. R. Co.,
 
 72 F.Supp. 669 (D.Minn.1946). Although payment of the interest requested by petitioners may, if appellees are correct, restrict the ability of the Trustees to operate the Railroad and diminish the likelihood of the satisfaction of all creditors by the Reorganization Court, there is no question that the Reserve Fund contains sufficient monies to pay the requested interest. However, payment of interest is not compelled, under any circumstances, by law or by decision of the Commission.
 

 The petition requesting authorization of the tender offer specifically provided for a “flat” tender offer, that is, without interest. The tender offer approved by the Administrative Law Judge and adopted by the Commission also specifically provided for a “flat” tender offer. Moreover, the Plan of Reorganization contains no provi
 
 *141
 
 sion for payment of any interest claim in cash; rather, it provides for the payment of the interest claims of first mortgage bondholders by the issuance of stock. Accordingly, the Reorganization Court properly viewed the interest petitions as “addressed to its discretion.”
 

 In reviewing the exercise of the Reorganization Court’s discretion, we use the standard articulated by the Supreme Court:
 

 It is not for us to pass upon the myriad factual and legal issues as though we were trying the cases
 
 de novo.
 
 “It is not enough to reverse the District Court that we might have appraised the facts somewhat differently. If there is warrant for the action of the District Court, our task for review is at an end.”
 
 Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co.,
 
 318 U.S. [523] at 564, 63 S.Ct. [727] at 749, 87 L.Ed. 959.
 

 New Haven Inclusion Cases,
 
 399 U.S. 392, 435, 90 S.Ct. 2054, 2081, 26 L.Ed.2d 691 (1970).
 

 We reject the bondholders’ contention that the “balance of the equities” so strongly favors the payment of interest that denial of payment constitutes an abuse of discretion. It is not our role on appeal to conduct a balancing test.
 
 Cf. Vanston Committee v. Green,
 
 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946) (affirmance of invocation of equitable principles to pay 4% interest to bondholders rather than 6% required by state law, where security ample to pay either amount). If there is a sound reason for the decision of the Reorganization Court, it does not matter that there are also sound reasons for the opposite result.
 
 New Haven Inclusion Cases, supra.
 

 In its decision, the Reorganization Court discussed and dismissed the arguments presented on behalf of payment of the interest. The court then discussed and dismissed a major argument of those opposing payment of the interest, the jurisdictional question. Finally, the court turned to the remaining arguments of the opponents in a way that showed the Court believed each to have merit.
 

 The Reorganization Trustees oppose these petitions as a matter of business judgment on the grounds that the interim interest payment is not in the best interests of the Debtor. Payment of interim interest will not constitute a settlement of the claims of bondholders who will not tender their bonds under the tender offer, and in such cases the reduction of debt will be slight. Up to the present, the railroad has not shown sufficient stability of earnings from railroad operations to support withdrawal of cash to the extent sought. The Reorganization Trustees have been able to settle tax claims against the Debtor, which claims have a priority superior to that of the bondholders, and it is in the best interests of the Debtor that these settlements continue. While it cannot be foreseen with accuracy that such settlements will be seriously hampered by the payment of interim interest, the tax settlement payments must be regarded as having significant weight in considering the best interests of the Debtor. Moreover, should there be a reordering of priorities of the per diem claims of interline railroads, and the claims of creditors under the “six-month” rule and “necessary of payment” rule, as a result of appellate review, the impact on the Restricted Funds would be substantial.
 

 There has been no showing that the trustees’ exercise of their business judgment was in bad faith. In addition, there is merit to their opinion that payment of the requested interest might not be in the interest of the Debtor. A very substantial part of the interest requested by appellants would go to those who have already accepted the tender offer. With regard to this group, the payment would in effect be a gratuity extended to former creditors and would reduce the available funds without reducing the total debt. Whether or not this fact would render a grant of interest necessarily improvident, it is reason enough to support a decision by the court not to grant the interest. We need not examine in detail all five reasons given by the district court for its decision, since a sound
 
 *142
 
 reason for one of them effectively eliminates any grounds for abuse of discretion and that its decision was clearly erroneous. Fed.R.Civ.P. 52(a).
 

 Because the reorganization of the Railroad is about to enter its eleventh year, we feel compelled to comment on the primary argument of appellants, the delay in approval of the tender offer. All parties should have been aware that tender offers prior to adoption of a Plan of Reorganization are uncommon and that approval might take some time. Moreover, even if this fact were overlooked, once the Commission asserted jurisdiction and it became clear that approval might be delayed, appellants might have attempted to amend the tender offer to include an interest provision. No such attempt was made. We note that, although appellants have emphasized that the Commission apologized for not expediting consideration of the tender offer proposal, they failed to give similar emphasis to the Commission’s coincident comment that approval of the tender offer took no longer than most Commission actions. As noted by the Second Mortgage Indenture Trustees, any delay was neither extraordinary nor unexpected, but was to be expected as a normal part of a bankruptcy proceeding. The Supreme Court has emphasized this factor even .while affirming the payment of interest in a bankruptcy case:
 

 The general rule in bankruptcy and in equity receivership has been that interest on the debtors’ obligations ceases to accrue at the beginning of proceedings. Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment — a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved. Thus this Court has said: “We cannot agree that a penalty in the name of interest should be inflicted upon the owners of the mortgage lien for resisting claims which we have disallowed. As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate” (citations omitted).
 

 Vanston Committee v. Green,
 
 329 U.S. at 163, 67 S.Ct. at 240. While we do not say that delay may never require compensation in bankruptcy cases,
 
 see In re Boston and Maine Corp.,
 
 484 F.2d at 374, we think the general federal policy against payment of interest in bankruptcy cases is especially strong where the interests of creditors must be balanced against the interest of the public in an operating and financially healthy railroad.
 
 [4]
 

 The Reorganization Court’s Findings of Fact and Conclusions of Law
 

 Appellants also argue that the Reorganization Court failed to make adequate findings of fact and conclusions of law in support of its decision. Fed.R.Civ.P. 52(a). We find no merit in this argument. First, most of the parties stipulated to the facts. Those who did not were offered the opportunity to introduce other evidence, but none
 
 *143
 
 did so. Further, where, as here, no genuine factual issues were presented for decision, findings of fact and separate conclusions of law are not required.
 
 In re Metropolitan Realty Corp.,
 
 433 F.2d 676 (5th Cir. 1970),
 
 cert. denied,
 
 401 U.S. 1008, 91 S.Ct. 1251, 28 L.Ed.2d 544 (1971);
 
 In re Woodmar Realty Co.,
 
 384 F.2d 776, 780 (7th Cir. 1967),
 
 cert. denied,
 
 389 U.S. 1040, 88 S.Ct. 779, 19 L.Ed.2d 830 (1968);
 
 Jones v. New York Cent. R. Co.,
 
 182 F.2d 326 (6th Cir.),
 
 cert. denied,
 
 340 U.S. 850, 71 S.Ct. 78, 95 L.Ed. 623 (1950). Second, the decision of the Reorganization Court renders obvious its findings.
 
 See ante
 
 at p. 141. Finally, the purpose of Fed.R.Civ.P. 52(a) is to assist the appellate court by affording it a clear understanding of the ground or basis of the decision below.
 
 S. S. Silberblath, Inc. v. United States,
 
 353 F.2d 545, 549 (5th Cir. 1965). The decision of the Reorganization Court was not deficient in this regard.
 

 Affirmed.
 

 [1]
 

 . Boston and Maine Corporation reorganization cases to reach this court:
 
 In re Boston and Maine Corp.,
 
 600 F.2d 307 (1st Cir. 1979) (affirmance of denial of prereorganization per diem charges);
 
 In re Boston and Maine Corp.,
 
 596 F.2d 2 (1st Cir. 1979) (affirmance of injunction preventing implementation of state utility commission order pertaining to abandonment of lines);
 
 In re Boston and Maine Corp.,
 
 484 F.2d 369 (1st Cir. 1973) (affirmance of order allowing capital expenditures for repair of the line);
 
 In re Boston and Maine Corp.,
 
 455 F.2d 1205 (1st Cir. 1972) (order allowing abandonment of line vacated and remanded).
 

 [2]
 

 . The first mortgage bonds provided for the accrual of interest at 6% per annum. Interest for fifteen months, the period of delay claimed by appellant Madison Fund, Inc., would amount to approximately $3,500,000. Interest for one year, the period of delay claimed by appellants First National Bank of Boston and Malcolm W. Hall, would amount to approximately $2,800,000. During the period of delay, the money in the Reserve Fund, which financed the tender offer, earned interest at the rate of 9% per annum.
 

 [3]
 

 . A proposed Plan of Reorganization was filed with the Reorganization Court on December 12, 1975. Documents filed in this case indicate that, although the Railroad’s financial condition has improved over the years, it is still losing money.
 

 [4]
 

 . The problem of delay caused by the shuttling back and forth between the Reorganization Court and the Commission of questions integral to the reorganization has received extensive comment.
 
 See, e. g.,
 
 Sunderland,
 
 Suggestions for Improvement in Section
 
 77
 
 of the Bankruptcy Act,
 
 14 Bus.Law 487 (1959), and Swaine,
 
 A Decade of Railroad Reorganization Under Section
 
 77
 
 of the Federal Bankruptcy Act,
 
 56 Harv.L.Rev. 1037 (1943). Congress considered a variety of proposals to resolve this problem while deliberating on the Bankruptcy Act of 1978,
 
 see
 
 Simpson,
 
 Comments on the Railroad Reorganization Provisions of the Bankruptcy Act of 1973,
 
 30 Bus.Law 1207, 1216 (1975), and adopted provisions significantly decreasing the powers of the Commission and increasing the powers of the Reorganization Court.
 
 See, e. g.,
 
 11 U.S.C. §§ 1166, 1170, 1172 (1979).
 
 See also 5 Collier on Bankruptcy
 
 ¶ 1166.01 (15th ed. 1979). It would appear that the use of Reserve Fund monies to purchase first mortgage bonds would not require Commission approval under the new act. See 11 U.S.C. § 1166 (1979).