### In the Matter of BOSTON AND MAINE CORPORATION, Debtor.

### Bankruptcy No. 70–250–M.

United States District Court, D. Massachusetts.

Oct. 15, 1985.

Benjamin H. Lacy (Hill & Barlow, Boston, Mass.), for Manager of the Segregated Account.

Edward T. Robinson (Gaston Snow & Ely Bartlett, Boston, Mass.), for Madison Fund, Inc.

## MEMORANDUM
on the
*Application of Madison Fund, Inc. For Allowance Under Section 77(c)(12)*

FRANK J. MURRAY, Senior District Judge.

Madison Fund, Inc. (the "Applicant"), seeks an order from the court allowing payment out of the estate of the Debtor of expenses incurred, including attorneys' fees, for services rendered during the reor-

ganization period. Applicant's claim for the allowance sought is based on Section 77(c)(12) of the Bankruptcy Act [11 U.S.C. § 205(c)(12) ] as follows:

> Within such maximum limits as are fixed by the [Interstate Commerce] Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) incurred in connection with the proceedings and the plan by parties in interest. . . .

As the holder of $10.3 million face value first mortgage bonds of the Debtor's $46.3 million outstanding, the Applicant was a creditor and a party in interest of the Debtor's estate. The Applicant seeks an allowance equivalent to attorneys' fees it paid to the law firm of Gaston Snow & Ely Bartlett in the amount of $83,409.25, and other expenses incurred in the amount of $4,626.15, a total of $88,035.40. The Commission, pursuant to Section 77(c)(12), has fixed the maximum limit within which an allowance may be made and has filed its decision with the court.

■■■ Under Section 77(c)(12), expenses and costs may be allowed a party in interest as properly reimbursable out of the estate for services and activities which, while beneficial to the creditor's private interests, meet the requirement of providing benefit to the reorganization process and the estate. A creditor or other party in interest is not entitled to an allowance out of the estate for expenses incurred for services rendered or activities engaged in which were undertaken solely or primarily in serving the private interests of the actor. Recourse may be had to the reorganization process as a whole, and its several stages, to determine whether the efforts of the party in interest and its counsel may be accounted beneficial to the reorganization and the estate. In making that determination the court "is faced, not with applying a litmus-like test, but with exercising a prudent and realistic judgment". *In the Matter of Penn Central Transportation Company, Debtor,* 23 B.R. 499 (E.D.Pa.1982).

Services for which a party in interest may be allowed expenses and costs may turn on the results attained such as, for example, protecting or increasing assets, or toward decreasing the Debtor's indebtedness, or otherwise in rendering commendable assistance to the Debtor's Trustees or to the creditors. The distinction to be made between those services for which reimbursement may be made and those which are not reimbursable is not susceptible of exhaustive definition. However, services which are merely duplicative of services of the Debtor's Trustees, or other officers of the court, and do not result in measurable benefit to the estate are not reimbursable; nor are the expenses or costs of services reimbursable which take on the aspect of merely "watchdog services". *Matter of New York, New Haven & Hartford Railroad Co.,* 421 F.Supp. 249, 258 (D.Conn.1976).

The Applicant has designated the time span from June 16, 1977 to November 21, 1979 as the period within which the claim of reimbursable expenses and fees were incurred. During this period there were two matters before this court in which the Applicant as a bondholder had a private interest: the petition of the Debtor's Trustees for authority to finance a tender offer to redeem Debtor's first mortgage bonds at a discount, and the Applicant's effort to secure an order for payment of interest on the outstanding bonds.

In the Spring of 1977 the Debtor's Trustees petitioned the court for authority to use the major portion of the proceeds (restricted funds) of the sale of the Commuter Rail properties to make the tender offer. Before the petition was filed, the Debtor's Trustees consulted with, among others, counsel for the first mortgage indenture trustees and executives of the Applicant, to assess the degree of response by bondholders. Specifically, the Trustees sought to acquire $37.0 million face amount of the bonds using $32.0 million of the restricted funds, by tendering to bondholders $850 for each bond of $1,000 face value, with all accrued interest on the bond waived. The court heard the Trustees' petition and, de-

termining that the redemption proposal was intertwined with the plan of reorganization, transferred the petition in November 1977 to the Commission. The petition was referred to an Administrative Law Judge, who recommended to the Commission in December 1977 that the authorized amount of restricted funds to be used be limited to $20.5 million, and that bondholders be tendered not more than $800 on each bond of $1,000 face value, with accrued interest waived. In June 1978, after a public hearing on the decision of the Administrative Law Judge, the Commission agreed that the tender offer be fixed at $800 per bond of $1,000 face value, with interest waived, but that the Debtor be authorized to use restricted funds in the amount of $33.06 million to acquire the bonds. This court approved the tender offer proposal authorized by the Commission. *In the Matter of Boston and Maine Corp., Debtor*, 468 F.Supp. 1010 (D.Mass.1979).

When the tender offer was finally accomplished in 1979, it resulted in the acquisition and retirement of $36,992,000 face amount of first mortgage bonds, thus reducing the indebtedness on the bonds outstanding to $9,944,976.00 and increasing the Debtor's net worth by approximately $28.0 million. Moreover, the resulting increase in net worth motivated the Federal Railroad Administration to grant the application of the Debtor's Trustees for a loan of $26.0 million in full for rehabilitation of the Debtor's main line project, an increase of $11.0 million above the amount previously authorized. It cannot be doubted that the successful tender offer program was important in the ultimate reorganization and beneficial to the estate and its beneficial owners.

The petitions of the Applicant and another for payment of interest on the outstanding bonds were heard by this court and denied. *In the Matter of Boston and Maine Corp., Debtor*, No. 70–250–M, Document No. 2785 (unpublished opinion). On appeal to the circuit court of appeals the denial was affirmed. *In the Matter of Boston and Maine Corp., Debtor v. First National Bank of Boston*, 618 F.2d 137 (1st Cir.1980).

Counsel for the Applicant attended the first hearing before this court on the Trustees' petition for authority to make the tender offer; actively participated in the hearings held by the Administrative Law Judge; appeared before the Commission to oppose the appeal of the Commonwealth of Massachusetts from the decision of the Administrative Law Judge, and to urge modification of that decision; appeared before this court in substantial support of the Commission's decision on the tender offer, with modification of the amount to be tendered on each bond; brought proceedings in this court for an order of payment of interest on outstanding bonds, and appealed denial of the request to the circuit court.

■ The work of counsel during 1977 as regards the tender offer did not contribute to the reorganization process or the Debtor's estate to any extent to which the services performed by the Trustees had not previously been addressed. Its interests were "wholly aligned with the reorganization estate". Counsel kept well informed as to the progress of the Trustees' efforts. Applicant argues that but for its efforts during 1977, it would not have been able to argue before the Commission later that not only should the amount of restricted funds not be reduced but, rather, should be increased. The court is not persuaded that the events of 1977 constituted measurable contributions by the Applicant to the reorganization process or to the estate, and must deny the request for reimbursement.

■ It is clear that the time spent from December 1, 1977 through July 31, 1978 in preparation of the response to the Commonwealth's appeal did contribute beneficially to the estate. Counsel for the Applicant argued against reduction of the restricted funds, and successfully argued that the Commission should increase them over the $20.5 million fixed by the Administrative Law Judge. The court finds that these services are reimbursable in the amount of $15,108.00 for services rendered, and $566.44 for expenses incurred.

From August 1, 1978 through March 19, 1979 the counsel for the Applicant continued active in the proceedings relative to the tender offer, seeking an increase in the tender offer price to $850 per bond. The court does not view counsel's activities to have been in derogation of the tender offer proposal, and finds that it continued to support the tender offer while seeking an adjustment in the tender offer price. The court ultimately rejected the contentions of the Applicant on the tender offer price, stating that at that stage the "increase in the tender offer price raises a question of jurisdiction of the Commission over the tender offer", and the court was not disposed to "refer the matter back to the Commission". The arguments of the Applicant were not regarded by the court as obstructive; rather, the "issues [raised were] more fully defined [and] more thoroughly analyzed and presented". *Matter of New York, New Haven & Hartford Railroad Co., supra* at 254. The court finds that there was a resulting benefit to the reorganization process and to the estate, and allows reimbursement for the efforts of counsel for the Applicant in the amount of $11,911.50 for services rendered and $892.40 for expenses.

The court has examined all other contentions and claims for reimbursement by the Applicant, and is not persuaded that the efforts of the Applicant and its counsel on which the claims are based are reimbursable.

Accordingly, the court will allow reimbursement to Applicant in the sum of $27,019.50 for services, and $1,458.84 for expenses.