**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**No. 70–250–M.**

United States District Court, D. Massachusetts.

May 20, 1986.

Joseph H.B. Edwards, Bingham, Dana & Gould, Boston, Mass., for First Mortg. Trustees.

Benjamin H. Lacy, Hill & Barlow, Boston, Mass., for debtor's Trustee.

1. The pertinent parts of Section 77(c)(12) on this application for compensation follow:

    (12) Within such maximum limits as are fixed by the Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) incurred in connection with the proceedings and plan by parties in interest ... and *within such limits may make an allowance to be paid out of the debtor's estate for the actual and reasonable expenses incurred in connection with the proceedings and plan and reasonable compensation for services in connection there-*

*with by trustees under indentures ...* The Commission shall, at such time or times as it may deem appropriate, after hearing, fix the maximum allowances which may be allowed by the court pursuant to the provisions of paragraph (12) of this subsection (c) ....
[Emphasis added]

2. The Group of Institutional Bondholders (the "Group") consisted of holders of First Mortgage Bonds of the Debtor (originally in the amount of $14,198,000.00), who acted jointly in the reorganization proceedings.

MEMORANDUM

on

*Petition of Successor Trustees Under the First Mortgage Indenture For Allowance Under Section 77(c)(12)*

FRANK J. MURRAY, Senior District Judge.

The First National Bank of Boston and Malcolm W. Hall, successor trustees under the indenture of mortgage given by Boston and Maine Railroad to secure payment of the first mortgage bonds issued under the indenture, request the order of this court (the "reorganization court") granting them an allowance out of the Debtor's estate for reimbursement of expenses incurred in these reorganization proceedings during the period March 12, 1970 through August 31, 1982.

The successor trustees under the indenture of mortgage (the "Petitioners") seek allowance of the sum of $471,661.62, pursuant to Section 77(c)(12) [11 U.S.C. § 205(c)(12)][1] of the former Bankruptcy Act, for the actual and reasonable expenses incurred in connection with these reorganization proceedings. In addition the Petitioners seek reimbursement of the sum of $17,935.00 paid to the law firm of Foley, Hoag & Eliot for legal services rendered in the prosecution of certain appeals in the First Circuit Court of Appeals in which the Petitioners had a common interest with the Group of Institutional Bondholders.[2] The Petitioners also seek compensation in the amount of $10,000.00 for estimated legal expenses beyond August 31, 1982.

On June 9, 1983 the Interstate Commerce Commission (the "Commission") reported

to the reorganization court its decision [Finance Docket No. 26115 (Sub-No. 26)] determining the maximum limits of compensation allowable to the Petitioners, pursuant to the Commission's function set forth in Section 77(c)(12). The Commission fixed limits "at a sum not exceeding $441,825.85 for legal services and $36,429.77 for expenses", a total limit of $478,255.62. The Commission took no action on the request to fix the maximum limits of compensation for the work of Foley, Hoag & Eliot [3] or for anticipated legal expenses beyond August 31, 1982 of the Petitioners' counsel, Bingham, Dana & Gould ("Bingham").

The request of the Petitioners for allowance of compensation for the actual and reasonable expenses incurred in connection with the reorganization proceedings and plan of reorganization came on to be heard by the reorganization court, pursuant to the court's function under Section 77(c)(12). The Petitioners' expenses in the reorganization proceedings were the fees and the out-of-pocket disbursements of their counsel. At the hearing the evidentiary materials before the reorganization court were the Petitioners' written application (document no. 4482 on the docket of the reorganization case in this court) and the Commission's decision on determination of the maximum limits (document no. 4804). No objections to matters brought before the reorganization court at the hearing or to the Petitioners' request were raised at the hearing or called to the attention of the court. At this point, it should be noted that all of the proceedings and activities in the reorganization court occurring on and

after November 9, 1973 [4] upon which claims of the Petitioners are based came before the judge who is considering this request of the Petitioners for compensation pursuant to Section 77(c)(12).

The application of the Petitioners reflects active participation of the Petitioners through their counsel, Bingham, before the Commission and the reorganization court during the period March 12, 1970 through August 31, 1982. [5] This judge has first-hand knowledge of Bingham's participation in many of the activities referred to in the application.

The application contains the successor trustees' petition, the affidavit of Joseph H.B. Edwards, partner in the Bingham law firm, a memorandum outlining details of services performed by Bingham during the period of March 12, 1970 through August 31, 1982, a memorandum describing out-of-pocket expenses of the Bingham law firm, and a list in chronological form of time slips concerning services and activities of partners, associates and paralegals during the reorganization process. The entries set forth time records of the partners, associates and paralegals aggregating more than 6,000 hours. The records show that the Petitioners paid the Bingham law firm $441,821.75 for legal services, and reimbursed Bingham for out-of-pocket expenses in the amount of $36,429.77.

The court finds that the Bingham law firm rendered the services described in the application, and was paid the amounts for

---

**3.** In its decision reporting determination of maximum limits the Commission stated:

The First Mortgage Trustees have submitted only a general billing statement to indicate the services provided by Foley, Hoag and Eliot ... We would ... be willing to consider a further petition based on these services if the First Mortgage Trustees can supply us with more detailed information as to the exact nature of the services performed by this firm.

**4.** All matters and proceedings in which the Petitioners claim compensation prior to November 9, 1973 occurred during the term of the predecessor judge in these reorganization proceedings.

**5.** Petitioners acknowledge that during the first three years of the reorganization the First Mortgage Trustees and their counsel avoided much duplication of effort by consulting and conferring with the Group of Institutional Bondholders "and their experts whose positions on most, if not all, issues requiring decision appeared to The First Mortgage Trustees to be those appropriate to the best interests of all bondholders ... [and that] it was the opinion of the First Mortgage Trustees and their counsel that the ... Group was adequately representing the ... [b]ondholders as a class ...". (Document No. 2491 at par. 10).

legal services and out-of-pocket disbursements shown in the application.

Petitioners' claims are based upon activities and services of the Bingham law firm which are categorized as "the more important items benefiting the Reorganization Estate" and "countless other matters throughout the proceeding". The more important matters may be summarized in the following topics:

a.  Settlement of Real Estate Tax and Government Loan Claims

b.  Constitutional Litigation—Regional Rail Reorganization Act of 1973

c.  Conrail hearings

d.  Sale of Commuter Lines to the Massachusetts Bay Transportation Authority

e.  The Revolving Credit Agreement

f.  The Tender Offer

g.  The Northern Railroad's Claim

h.  FRA Rehabilitation Loan

i.  Drawdown for Payment of Back Wages

j.  Per Diem and Six-Month Claims

The issues in all of these matters came before this judge in the proceedings in the reorganization court. Each matter was important in the progress of the reorganization; several of them were critical to ultimate reorganization.

The issues were of various degrees of complexity, and required on the part of the Debtor's Trustees and of Petitioners' counsel many hours of activity directed toward the same goals of reducing the Debtor's indebtedness, preserving and increasing the value of the estate, and satisfying the demands of the public interest in uninterrupted railroad operation. During the time period involved in Petitioners' attending to the more important matters, Petitioners' counsel participated in hearings before the court, presented evidence in certain instances, filed briefs and presented oral arguments. The reorganization court spent many hours in holding hearings, receiving evidence and considering briefs and arguments of the Debtor's Trustees, the Petitioners' counsel and the opposing parties.

While the ultimate goals of the Debtor's Trustees and the Petitioners were in general the same, there were objectives which the Debtor's Trustees could not achieve without the assistance of Petitioners in acquiescing to the availability and use of restricted funds. There were also matters where the Petitioners stepped in and brought about results favorable to the estate after efforts of the Debtor's Trustees appeared to have come to an impasse. Even after the Debtor's plan of reorganization had been approved and the date of its consummation had been set, Petitioners acquiesced in the drawdown of $3.5 million cash from the restricted funds to enable the Debtor's Trustees to make payment of back wages to employees and thus avert the situation where the Debtor's Trustees "could not carry on the business of the Debtor". (See Tr. at 8, Hearing on Petition for Order No. 723).

Petitioners' counsel appeared before the reorganization court on numerous occasions on matters (other than those included in the category of the "more important items") to add support to petitions of the Debtor's Trustees, or to seek modifications of the Debtor's requests, or to oppose the requests. As counsel for the Petitioners stated in his memorandum (document no. 4895 at 13): "There was a constant stream of petitions by the Reorganization Trustees for leave to sell excess property to acquire or lease rolling stock or other equipment and for any number of other purposes. Acting on behalf of the First Mortgage Trustees we were the only party in interest actively reviewing, analyzing, commenting and discussing and sometimes objecting to these various petitions." The court recalls in large part the activities in general of Petitioners' counsel in such matters, and the assistance given to the court by counsel's participation resulting, in many instances, in an important contribution to advancing the reorganization process. Petitioners' counsel cooperated with Debtor's Trustees and the reorganization court in connection with the proceedings and plan by participating in the respective hearings

held before the Commission and the reorganization court in connection with approval of the plan of reorganization of the Debtor's Trustees.

■■■ Petitioners have the burden of proof that their activities and services undertaken in connection with the reorganization process provided a measurable and valuable benefit to the Debtor's estate. As indenture trustees the Petitioners served in a fiduciary capacity under a duty to protect their bondholders' interests in the reorganization and the value of the Debtor's property on which the bondholders' interests depended. In performing that duty they were active and diligent to seek information of all relevant aspects of the Debtor's estate at all phases of the reorganization process (the "watchdog services"), to make suggestions, to participate in the proceedings, and to cooperate in seeking to advance the course of the reorganization to a conclusion. *See Matter of New York, New Haven & Hartford R. Co.*, 421 F.Supp. 249, 258 (D.Conn.1976).

■■■ Services for which Petitioners seek compensation must not be merely duplicative of the activities of the Debtor's Trustees or their counsel or of those of other claimants. It is not entirely likely that in the wide-range of activities of the Petitioners here there was a total absence of duplication of some of the work of the Debtor's Trustees, but there is nothing to show that Petitioners' efforts and activities for which compensation is sought did not serve a useful and valuable purpose beneficial to the estate. While the efforts of the Petitioners and their counsel were of benefit to the First Mortgage Bondholders, the influence of their efforts extended beyond that goal and perceptibly benefited the entire estate.[6]

In determining the allowance to be made to the Petitioners within the purview of

Section 77(c)(12), the court has given detailed and full consideration to the hours expended by Petitioners' counsel, the hourly basis of the fees charged, the fees and reimbursements paid by the Petitioners, and the benefit and value to the estate of the services rendered. In accordance therewith an order granting the allowance shall enter herewith.

## ORDER

After hearing the application of the First National Bank of Boston and Malcolm W. Hall, successor trustees under the indenture mortgage, for allowance out of the Debtor's estate for reinbursement of expenses incurred and reasonable compensation for services rendered, as described in the Memorandum filed herewith, it is hereby ORDERED, ADJUDGED and DECREED:

1. That an allowance of $36,429.77 be made to First National Bank of Boston and Malcolm W. Hall, as successor trustees, for reimbursement of expenses incurred in these reorganization proceedings, and an allowance of $433,821.85 be made to such successor trustees as reasonable compensation for services in connection with the proceedings and plan of reorganization in this reorganization.

2. That payment to First National Bank of Boston and Malcolm W. Hall, as successor trustees, of the allowances herein authorized shall be pursuant to the Consummation Order of the court entered June 17, 1983, and the Supplements thereto.

WITNESS The Honorable Frank J. Murray, Judge of the District Court and the Seal thereof at Boston, Massachusetts, this 20th day of May 1986.

---

**6.** The court had but one reservation to this conclusion: Petitions involving the joint activities of the Petitioners and the Madison Fund to persuade the court to authorize payment of an additional one year's interest on the first mortgage bonds were denied after hearing. *In the*

*Matter of Boston and Maine Corp., Debtor,* No. 70–250–M, doc. no. 2785 (D.Mass. May 22, 1979), *aff'd,* 618 F.2d 137 (1st Cir.1980). In fixing compensation on Petitioners' application here, this court discounts Petitioners' efforts in such activity.